883 F.2d 68
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
GLOVER INDUSTRIES, INC., Plaintiff-Appellant,
v.
NATIONAL OLD LINE INSURANCE COMPANY, Defendant-Appellee.
 No. 89-2901.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1989.
Decided Aug. 14, 1989.
 
 1
 Kenneth R. Wooten (Ward & Smith, P.A. on brief) for appellant.
 
 
 2
 Michael E. Weddington (Kimberly J. Korando, Smith, Anderson, Blount, Dorsett Mitchell & Jernigan on brief) for appellee.
 
 
 3
 Before CHAPMAN, Circuit Judge, EUGENE A. GORDON, Senior United States District Court Judge for the Middle District of North Carolina, sitting by designation, and GEORGE ROSS ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 
 EUGENE A. GORDON, Senior District Judge:
 
 4
 Glover Industries, Inc. appeals from an order granting National Old Line Insurance Company's (National) motion for summary judgment. The district court found that the insured made material misrepresentations in obtaining a life insurance policy thereby justifying National's refusal to pay death benefits. Finding no genuine issue as to any material fact, we affirm.
 
 I.
 
 5
 Amos Griffin Glover (Glover) submitted on July 19, 1983 an application to National for a life insurance policy under which Glover Industries was the beneficiary. The application included a completed medical information form signed by Glover and witnessed by his personal physician. Glover indicated in the form that he had undergone heart by-pass surgery in November 1980 but had experienced "no problem since [the] operation." Further, Glover responded affirmatively to inquiries concerning medical treatment, examination or consultation that was ongoing or had occurred in the last five years explaining that these were follow-up visits relating to his 1980 coronary by-pass. Because of his medical history, National obtained Glover's medical records which contained notations that there was calcification of his abdominal aorta and that he had atherosclerosis.
 
 
 6
 David Callen, National's Chief Underwriter, handled the Glover application. Glover's coronary by-pass medical history rendered him an automatic decline under National's underwriting standards. National was aware, however, that some reinsurance companies were conducting experimental programs in which they would accept reinsurance on individuals with medical histories like Glover's. National submitted the entire Glover file to these reinsurance companies, including Lincoln National Life Insurance Company (Lincoln).
 
 
 7
 Jerry Lotter, a Lincoln underwriter, reviewed the Glover application for the purpose of characterizing risk and determining whether Lincoln would accept reinsurance on Glover. Lincoln offered National one hundred percent reinsurance on the Glover policy provided that the policy was delivered prior to January 25, 1984. Due to the period of time between Glover's application and examination for insurance and delivery of the policy, National conditioned delivery upon Glover's execution of a Certificate of Good Health.
 
 
 8
 Glover met with a National representative to execute the certificate on January 4, 1984. The relevant provision in the certificate states:
 
 
 9
 I further represent and state that I am now in good health and have been since my last examination or application for insurance in the National Old Line Insurance Company, and that I am free from all disease, deformities or ailments, and of temperate habits; that since the date of such examination or application I have had no injuries, ailments or illnesses, and have not been sick from any cause; that since the date of such examination or application I have not consulted, or been prescribed for or attended by, a physician or practitioner for any cause, except as hereinbelow stated.
 
 
 10
 Glover responded, "no exceptions." In reliance upon this representation, National delivered the policy.
 
 
 11
 Glover died as a result of subarachnoid hemorrhage that arose from a brain stem aneurysm. Upon receiving notice of Glover's death and a claim for death benefits, National conducted a claim investigation. The investigation revealed that subsequent to Glover's application and examination for insurance and prior to delivery of the policy he had consulted with Doctors Grode, Boyd and Podolak. These doctors diagnosed Glover as having an abdominal aortic aneurysm and recommended surgery. Glover was referred to Dr. Wechsler for a second opinion. Dr. Wechsler concurred with the diagnosis but recommended a more conservative treatment.
 
 
 12
 National concluded that a change in Glover's insurability had occurred and that he had materially misrepresented his health at the time he accepted delivery of the policy. Based on these grounds, National declined Glover Industries' claim for the death benefits.
 
 
 13
 Glover Industries commenced this action against National seeking payment of the death benefits, punitive damages and treble damages for unfair practices in violation of Chapters 58 and 75 of the North Carolina General Statutes. National filed a motion for summary judgment and Glover Industries filed a motion for partial summary judgment. The district judge entered an order granting National's motion and striking Glover Industries' motion as untimely. This appeal followed.
 
 II.
 
 14
 A material misrepresentation made by a life insurance applicant provides a sufficient ground to void the insurer's obligation to pay the policy death benefits. Tolbert v. Mutual Benefit Life Ins. Co., 236 N.C. 416, 72 S.E.2d 915 (1952); N.C.Gen.Stat. Sec. 58-30 (1982). The insurer bears the burden to prove that the insured's written representations in the application were (1) untrue and (2) material; the insurer need not prove that the representations were fraudulently made. Royal Exch. Assurance v. Fraylon, 228 F.2d 351, 353 (4th Cir.1955).
 
 A.
 
 15
 The district court properly held that undisputed evidence established that the written representations which Glover made on the Certificate of Good Health were untrue. Glover responded that, without exception, he had suffered no ailments from any cause and had not been consulted by any physician since his application and examination. Medical records, however, reveal that Glover consulted four doctors concerning the diagnosis and treatment of an abdominal aneurysm in November 1983.
 
 
 16
 Glover Industries argues that the representation in the certificate is ambiguous; that Glover reasonably interpreted the representation as not to require disclosure of the abdominal aneurysm diagnosis because it may have developed from the previously discovered atherosclerosis. Consequently, Glover Industries asserts that Glover did not make a misrepresentation with his "no exception" response.
 
 
 17
 Whether an insurance provision is ambiguous is a question of law. Maddox v. Colonial Life & Accident Ins. Co., 303 N.C. 648, 280 S.E.2d 907, 908 (1981). Absent ambiguity reasonably susceptible to conflicting interpretations, courts must enforce the contract as written. North Carolina Nat'l Bank v. United States Casualty Co., 317 F.2d 304, 309 (4th Cir.), cert. denied, 375 U.S. 905 (1963). Glover Industries attempts to qualify the plain import of the phrase "any cause" to mean any cause not previously disclosed to or discovered by National. Assuming that the phrase is ambiguous, Glover Industries cannot prevail even under its construction of the representation.
 
 
 18
 The abdominal aneurysm diagnosis was not disclosed to or discovered by National. We decline to hold that National's discovery of Glover's atherosclerosis relieves Glover of the duty to disclose his subsequent abdominal aneurysm diagnosis. Although atherosclerosis and aneursyms share a common ideology, an aneursym is a different "ailment" attendant with its own treatment and risks. Under Glover Industries' construction, an insured would be required to characterize the type of ailment or consultation; only those ailments or consultations which are completely distinct from previously disclosed or discovered ailments or consultations need be divulged. Requiring this type of characterization interjects ambiguity into an otherwise clear representation. See Cockerham v. Pilot Life Ins. Co., 92 N.C.App. 218, 374 S.E.2d 174 (1988).
 
 B.
 
 19
 The district court properly held that there was no genuine issue of material fact as to whether Glover's misrepresentations were material. "[U]nder North Carolina law written questions relating to health and written answers thereto in a life insurance application are deemed material as a matter of law." Rutherford v. John Hancock Mut. Life Ins. Co., 562 F.2d 290, 293 (4th Cir.1977) (citing Rhinehardt v. North Carolina Mut. Life Ins. Co., 254 N.C. 671, 119 S.E.2d 614 (1961)).
 
 III.
 
 20
 Glover Industries contends that National waived its right to avoid payment under the policy because it knew of Glover's abdominal aneurysm.[1] As the only evidence to support its contention, Glover Industries proffers a note taken by Callen after speaking with Lotter in December 1983. The note stated that Lincoln had received "additional information" that would have caused Lincoln to decline reinsuring the Glover policy. As a reinsurer, Lincoln received applications, medical records and requests for reinsurance on Glover from other insurance companies. Glover Industries asserts that the additional information must have involved the abdominal aneurysm diagnosis. The district court held that there was no evidence to support this speculation. We agree.
 
 
 21
 The record is devoid of evidence to support a reasonable inference that National knew of the diagnosis when the policy was delivered. In his deposition, Callen testified that he did not know the substance of the additional information. Glover Industries responds by attempting to impute the knowledge of Lincoln to National. Notwithstanding the failure to prove that Lincoln acted as National's agent, this theory has no factual basis in the record. Lotter stated in his affidavit that Lincoln learned of the diagnosis after Glover's death and that a review of all reinsurance materials which Lincoln had on Glover did not prove otherwise. Even assuming that Lincoln was National's agent and knew of the diagnosis, Lincoln would have acted outside the scope of its authority if it had informed National of the diagnosis because a confidentiality agreement precluded the transfer of such information.
 
 IV.
 
 22
 Because of the foregoing analysis, three other issues are ripe for summary judgment. First, Glover Industries' claim for punitive damages must fail. Punitive damages cannot be awarded where compensatory damages have not been awarded. United States v. Snepp, 595 F.2d 926, 937 (4th Cir.1979), rev'd on other grounds, 444 U.S. 507 (1980).
 
 
 23
 Second, National's conduct in this case was proper, therefore, Glover Industries cannot maintain an action under North Carolina statutes for unfair or deceptive trade practices. See generally Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir.1987) ("a practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive") (citations omitted).
 
 
 24
 Third, the district judge properly struck Glover Industries' untimely motion for partial summary judgment. Glover Industries had failed to show excusable neglect as required by Fed.R.Civ.P. 6(b). We note parenthetically that the issue raised in the motion as to whether Glover made a misrepresentation in answering the certificate was addressed by the district court; the other issues raised, whether Glover misrepresented his or his family's medical history in the application, were not relevant to the district court's decision.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Glover Industries further argues that National's knowledge of Glover's atherosclerosis constitutes a waiver of the misrepresentation defense. To waive an insured's misrepresentation, an insurer must have knowledge, actual or constructive, of the facts upon which it seeks to void the policy. Yale v. National Indem. Co., 664 F.2d 406, 409 (4th Cir.1981). Therefore, National must have had prior knowledge of the abdominal aneurysm diagnosis to have waived it; knowledge of atherosclerosis is not sufficient