FRANCES MADDOX v. COLONIAL LIFE AND ACCIDENT INSURANCE COM-
PANY

No. 18

(Filed 17 August 1981)

**Insurance § 52— select risk accident policy—reduction clause for "shooting self-inflicted"**

In an action to recover under a "Master Select Risk Accident Policy" providing coverage for death caused by "accidental means" and excluding coverage for death by suicide, a clause of the policy reducing the beneficiary's recovery to one-fifth of the face amount of the policy for death resulting from "shooting self-inflicted" was inapplicable where insured was killed by a bullet from a pistol which had been handed to insured by his son, the pistol was fired while still in its holster, the pistol was found a few feet from insured's body, and the gun could discharge if it struck the ground while holstered, and the beneficiary was entitled to recover the face amount of the policy.

Justices HUSKINS, EXUM, BRITT and MEYER concur in the result.

Justice CARLTON concurring in the result.

Chief Justice BRANCH joins in the concurring opinion.

PLAINTIFF appeals as a matter of right from the decision of
the Court of Appeals, 49 N.C. App. 251, 271 S.E. 2d 103 (1980)
(opinion by *Judge Harry C. Martin* with *Judge Clark* concurring
and *Judge Hill* dissenting). The Court of Appeals reversed sum-
mary judgment in favor of plaintiff entered by *McDarris, J.,* at
the 10 December 1979 Session of District Court, SWAIN County,
and remanded to that court for entry of summary judgment in
favor of defendant.

Plaintiff brought this action as the named beneficiary of a
"Master Select Risk Accident Policy" issued by defendant, insur-
ing the life of Carter Maddox. The policy was in effect at the time
of Carter Maddox's death on 26 October 1977.

On that date the deceased and his son, Keith Maddox, were
working at a water tank or reservoir. Keith was carrying a .41
caliber magnum Ruger pistol in a holster. When he began work-
ing at the tank, Keith handed the holstered pistol to Carter Mad-
dox. Shortly thereafter Keith heard a sound, turned around, and
saw his father sitting or lying on the ground. He had been injured
by a bullet from the pistol and subsequently died as a result of

---

---

the gunshot wound. The pistol was found on the ground a short distance from Carter Maddox with the muzzle end of the holster torn out by the discharge of the pistol. No other persons were in the vicinity at the time of the incident. The parties agree that the pistol could fire if it was dropped on the ground while holstered.

Plaintiff contends that upon this evidence she was entitled to receive the face amount of the policy, $3,750.00. Defendant contends that plaintiff's claim is governed by the reduction clause of the policy, and therefore plaintiff is entitled to recover only $750.00.

Both plaintiff and defendant filed motions for summary judgment. The trial court denied defendant's motion and entered summary judgment for plaintiff in the amount of $3,750.00. The Court of Appeals reversed, Judge Hill dissenting, and remanded to the trial court for entry of summary judgment in favor of defendant. Plaintiff appeals as a matter of right pursuant to G.S. 7A-30(2).

*Holt, Haire & Bridgers, P.A., by Phillip Haire for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice by Allan R. Gitter and James M. Stanley, Jr., for defendant appellee.*

COPELAND, Justice.

The sole question presented by this appeal is whether the reduction clause of the "Master Select Risk Accident Policy" issued by defendant to insure the life of Carter Maddox applies in this case to reduce plaintiff's recovery to one-fifth of the face amount of the policy. For the reasons stated below, we reverse the Court of Appeals' majority opinion and find that the trial court properly held the reduction clause inapplicable and correctly granted summary judgment in favor of plaintiff for the face amount of the policy.

The provisions of the policy which we are called upon to construe state in pertinent part as follows:

### EXCEPTIONS AND REDUCTIONS

The insurance under this policy shall not cover: (a) suicide while sane or insane; . . .

---

---

. . . .

> For death covered by the provisions of this policy, where it results from . . . shooting self-inflicted, . . . the amount payable shall be one-fifth the amount otherwise payable for accidental death. . . .

Defendant contends and the Court of Appeals held that although the shooting which resulted in Carter Maddox's death was accidental, it was also "self-inflicted" within the meaning of the reduction clause, and therefore plaintiff's recovery was limited to one-fifth of the face amount of the policy.

In interpreting the relevant provisions of the insurance policy at issue, we are guided by the general rule that in the construction of insurance contracts, any ambiguity in the meaning of a particular provision will be resolved in favor of the insured and against the insurance company. Exclusions from and exceptions to undertakings by the company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy. The various clauses are to be harmoniously construed, if possible, and every provision given effect. *Woods v. Nationwide Mutual Insurance Co.*, 295 N.C. 500, 246 S.E. 2d 773 (1978); *Grant v. Emmco Insurance Co.*, 295 N.C. 39, 243 S.E. 2d 894 (1978); *Wachovia Bank & Trust Co. v. Westchester Fire Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518 (1970). An ambiguity exists where, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions asserted by the parties. *Wachovia Bank & Trust Co. v. Westchester Fire Insurance Co., supra.*

After considering the disputed provisions of the policy at issue in light of the above rules of insurance contract construction, we hold that the reduction clause does not apply to limit plaintiff's recovery in the case *sub judice.* We initially note that absent the applicability of an exclusion or reduction clause, Carter Maddox's death was within the coverage of the policy as a death brought about by "accidental means." The policy expressly provides "indemnity for loss of life . . . caused by bodily injuries effected through accidental means, as herein limited and provided." The term "accidental means" has been interpreted by this Court as follows:

" 'accidental means' refers to the occurrence or happening which produces the result and not to the result. That is, 'accidental' is descriptive of the term 'means.' The motivating, operative and causal factor must be accidental in the sense that it is unusual, unforeseen and unexpected. . . . (T)he emphasis is upon the accidental character of the causation—not upon the accidental nature of the ultimate sequence of the chain of causation." *Fletcher v. Trust Co.*, 220 N.C. 148, 150, 16 S.E. 2d 687, 688 (1941). *See also Chesson v. Pilot Life Insurance Co.*, 268 N.C. 98, 150 S.E. 2d 40 (1966).

The pistol discharge which caused Carter Maddox's death occurred while the gun was still holstered. The parties agreed that the pistol could fire if it was dropped on the ground while holstered. The evidence is thus clear that the shooting was brought about by an unusual, unforeseen, and unexpected event which was an "accidental means" within the policy description.

We find that the majority in the Court of Appeals erred in interpreting the clause reducing recovery for death resulting from "shooting self-inflicted" as applying to a situation, such as the one before us, in which the shooting was brought about by accidental means. The Court of Appeals reached its conclusion by finding no ambiguity in the disputed provisions of the policy and holding that a "shooting self-inflicted" necessarily includes the situation in which an insured accidentally shoots himself. The majority reasoned that one could shoot oneself with a pistol, causing death, in one of only two ways: "(1) intentionally, that is, suicide, and (2) accidentally." 40 N.C. App. at 253, 271 S.E. 2d at 104. Where the shooting resulted from any intentional act, the court held that the beneficiary was precluded from any recovery under the suicide exclusion. Therefore, for the reduction clause pertaining to "shooting self-inflicted" to have any effect, it must be construed to apply to the insured's accidental shooting of himself. The court further reasoned that since Carter Maddox's death resulted from an accidental shooting of himself, the reduction clause applied to limit plaintiff's recovery under the policy. We agree that the reduction clause and the suicide exclusion must be construed together so that each provision has a separate application and effect. However, we believe the Court of Appeals based its decision on two erroneous premises; first, that no ambiguity exists in the disputed provisions of the policy, and second, that

one could shoot oneself in only two ways. The court interpreted the term "suicide" as it appears in the policy to include any situation in which one is killed by his own intentional actions. Since no definition of suicide appears in the policy, the court must define the term in a manner consistent with the context in which it is used and the meaning accorded it in ordinary speech. *Woods v. Nationwide Insurance Co., supra.* "Suicide" is defined in Webster's Third International Dictionary 2286 (1971), as an "act or an instance of taking one's own life voluntarily and intentionally." Black's Law Dictionary 1286 (5th ed. 1979) refers to "suicide" as follows: "Self-destruction: the deliberate termination of one's existence." From these definitions it is clear that in its ordinary use, the term suicide embodies not merely an intent to do the act which ultimately results in one's own death, but the intent to end one's own life. This interpretation of suicide is consistent with the context in which it is used in the insurance policy at issue and comports with the general rule that exclusions in an insurance policy are to be strictly construed against the company. Applying this definition of suicide to the rationale employed in the Court of Appeals' majority opinion, it appears that there are three ways in which one could shoot oneself with a pistol, causing death: (1) with the intent to kill oneself, which is suicide, (2) with the intent to perform the act which ultimately resulted in one's own death, but without the intent to kill oneself, and (3) accidentally. Considering these three methods in light of the policy provisions which we are compelled to construe in this case, we find that the clauses may be harmoniously interpreted in a manner which allows plaintiff to recover the full face amount of the policy. The provision excluding coverage for death by suicide would apply to the situation in which one shot oneself with the intent to take one's own life. The clause reducing coverage for deaths caused by a "shooting self-inflicted" by one-fifth of the amount otherwise recoverable would apply in the event that the insured intended the act of shooting, which shooting ultimately resulted in his death, but did not intend to kill himself. In a situation such as the one before us, where the shooting was apparently accidental and the resulting death unintended, neither the suicide exclusion nor the reduction provision applies, and the beneficiary may recover the face amount of the policy due to the insured's death by "accidental means."

Our interpretation of the term "shooting self-inflicted" as referring to only those shootings which occur when the insured

wills or intends to employ the firearm is supported by the decisions of other jurisdictions. In *National Security Insurance Co. v. Ingalls*, 323 So. 2d 384 (Ala. Civ. App. 1975), the insured was injured when an object fell onto a shotgun resting on the floorboard of his car, causing it to discharge and strike the insured in the leg. The policy under which he was insured for injury or death caused by "accidental means" contained a clause reducing recovery to twenty-five percent of the amount otherwise payable where the injury or death resulted from a "shooting accidentally self-inflicted." In construing the phrase "shooting accidentally self-inflicted," the court noted that "[a]n injury is 'self-inflicted' only when the insured wills it or intends to cause it." The reduction clause, said the court, applies only when "the injury results from direct, immediate, and conscious employment of a firearm by the victim." 323 So. 2d at 386. *See also Lynch v. Mutual Life Insurance Co. of New York*, 48 A. 2d 877 (Pa. Super. Ct. 1946). The reduction clause of the policy at issue in the case before us lends itself even more readily to this interpretation, in that the term "shooting self-inflicted" is not modified by the word "accidentally."

The Court of Appeals' majority opinion correctly cited two cases, *Colonial Life and Accident Insurance Co. v. Cook*, 374 So. 2d 1288 (Miss. 1979), and *Lemmon v. Massachusetts Protective Association*, 53 F. 2d 255 (N.D. Okla. 1931), as authority for the proposition that a "shooting self-inflicted" includes a shooting brought about by accidental, unintentional means. However, we find both decisions distinguishable from the case *sub judice*. In the *Cook* case, the court was interpreting a clause which reduced recovery where the insured's death or injury was caused by a "shooting accidentally self-inflicted." Since the reduction provision at issue in this case reads "shooting self-inflicted," the court's decision in *Cook* is not directly contrary to our present holding.

The policy provision interpreted in *Lemmon* was more similar to the one before us, in that it provided for reduced coverage in the event that death was caused by a "shooting self-inflicted." In that case, however, the court did not follow the rules of construction by which this Court is guided. The general rules that exclusion and reduction clauses in an insurance contract are to be strictly construed against the company, and that any am-

biguity in the terms of the policy is to be resolved in favor of the insured, were never mentioned in the opinion.

We feel the fact that the courts of other jurisdictions have reached conflicting interpretations emphasizes the ambiguity inherent in the phrase "shooting self-inflicted." We believe our interpretation of the term as referring to a shooting of oneself with the intent to employ the firearm, but without the intent to kill oneself, best comports with the general rules of insurance contract construction without rendering any provision of the policy redundant or ineffectual. Consequently, neither the suicide exclusion nor the reduction provision apply in this case to limit plaintiff's recovery of the face amount of the policy due to Carter Maddox's death by "accidental means."

For the reasons stated, we reverse the decision of the Court of Appeals and remand to that court with instructions to remand to the District Court, Swain County, for entry of summary judgment in favor of the plaintiff.

Reversed.

Justices HUSKINS, EXUM, BRITT and MEYER concur in the result.

Justice CARLTON concurring in the result.

I concur only in the result reached by the majority because I cannot agree with its interpretation of the term "self-inflicted." In interpreting that term to require an intent to inflict but not to kill, the majority has, in effect, created coverage for shooting deaths in which the shooting was intentional but the result, death, was not. Such an interpretation is clearly inconsistent with the *express* purpose and scope of the insurance policy — to compensate only those losses caused by an *accidental* means. Because the policy expressly covers only losses due to "accidental means" and the express purpose of the clause which contains the term "self-inflicted" is to *reduce* the scope of coverage, the term "self-inflicted" can be logically interpreted only to refer to accidental means and not to accidental result.

My reasoning is simple: Defendant issued Carter Maddox, the deceased, a "Master Select Risk Accident Policy." The policy in-

sured him "against loss resulting directly and exclusively of all other causes from bodily injuries effected solely through external, violent and *accidental* means." (Emphasis added.) As the majority states:

> " 'Accidental means' refers to the occurrence or happening which produces the result and not to the result. That is, 'accidental' is descriptive of the term 'means.' The motivating, operative and causal factor must be accidental in the sense that it is unusual, unforeseen and unexpected. Under the majority view the emphasis is upon the accidental character of the causation — not upon the accidental nature of the ultimate sequence of the chain of causation."

(quoting *Fletcher v. Security Life & Trust Co.*, 220 N.C. 148, 150, 16 S.E. 2d 687, 688 (1941) ). Thus, the policy insuring Carter Maddox insured only against loss resulting from an accidental cause. It follows, then, that the policy does not insure against losses resulting from non-accidental means even though the resulting injury was accidental. In short, under this "Master Select Risk Accident Policy," the accidental nature of the result is irrelevant; the loss is covered only if it results from accidental means.

The policy issued by defendant does not provide full coverage for all losses resulting from accidental means. As its title indicates, the policy insures only against *selected* risks. Further, the policy coverage for loss resulting from accidental means is limited. One of these limitations is for "shooting self-inflicted." With regard to this risk, the policy provides: "*For death covered by the provisions of this policy,* when it results from . . . shooting self-inflicted, . . . the amount payable shall be one-fifth the amount otherwise payable." (Emphasis added.) It is with regard to the interpretation of his provision that the majority and I disagree. The above-quoted clause provides a reduction in the proceeds payable for a certain class of loss already covered by the policy. This reduction clause begins with, "For death covered by the provisions of the policy," and does not create, but reduces, coverage. The policy covers loss effected through *accidental means* only, and the interpretation of the term "shooting self-inflicted" in the limitation or reduction clause *must*, I submit, be interpreted in light of the scope of the policy's coverage. Therefore, death from "shooting self-inflicted" can refer only to death due to accidental means.

The majority has interpreted this reduction clause to apply to situations in which the insured intends the act of shooting but does not intend to kill himself: intentional means, but accidental results. I strenuously contend that because the general coverage clause of the policy limits its coverage to losses resulting from accidental means, the reduction clause can only further reduce the coverage and does not create coverage for losses resulting from an intentional means.

In my opinion, the reduction in coverage for death resulting from shooting self-inflicted applies to reduce coverage in a situation in which the insured shoots himself and the means is accidental, *i.e.*, when the insured does not intend to, but accidentally does, cause the gun to fire. "Self-inflicted" means simply that the insured pulled the trigger or otherwise directly caused the gun to fire. Whether the result was accidental is irrelevant. The policy covers losses from accidental means only; therefore, the reduction in coverage for "shooting self-inflicted" must also refer only to accidental means. A clause which reduces coverage cannot be interpreted to create coverage. "Shooting self-inflicted" can mean only the situation in which the deceased is shot by his own hand when he accidentally pulled the trigger, *i.e.*, the causal factor of pulling the trigger must be "unusual, unforeseen and unexpected." *Fletcher v. Security Life & Trust Co.*, 220 N.C. at 150, 16 S.E. 2d at 688.

In this case, there is no direct evidence of who or what caused the gun to fire. We know only that the gun was fired while in its holster, that the gun was found a few feet from the insured's body, and that the gun could discharge if it struck the ground while holstered. There is no evidence that the insured committed suicide; indeed, in this state there is a strong presumption against suicide. *Adcock v. Life Assurance Co. of Carolina,* 31 N.C. App. 97, 228 S.E. 2d 654 (1976). Both plaintiff and defendant agree that this shooting resulted from an accidental means; defendant's concession of coverage in the amount of $750 is an admission that the shooting resulted from accidental means. Whether the insured accidentally pulled the trigger or whether he dropped the gun and the force of impact caused the discharge is a matter we will never know. To decide on the cause would be pure speculation. The amount to which plaintiff is entitled depends upon the burden of proof with regard to the issue of "shooting self-inflicted." In my opinion, whenever the plaintiff has established coverage, the

burden shifts to the insurer to prove that coverage has been reduced. Because the insurer cannot, under the facts of this case, meet the burden of showing that the shooting was self-inflicted, *i.e.*, that the insured pulled the trigger, plaintiff is entitled to recover the full amount of the policy, $3,750.

Chief Justice BRANCH joins in this concurring opinion.