CITY OF GREENVILLE AND NATIONAL CASUALTY COMPANY, PLAINTIFFS-APPELLANTS v. CONNIE LORRAINE SMITH HAYWOOD, DEFENDANT-APPELLEE AND DONALD WADE FOSTER, DEFENDANT

No. COA97-646

(Filed 21 July 1998)

1. **Insurance— coverage—assault by police officer—sodomy as personal injury**

The trial court correctly granted summary judgment for defendant in a declaratory judgment action to determine whether the City's insurance policy provided coverage for a sexual assault committed by a police officer. The policy provided coverage for personal injury, defined to include assault and battery, and the officer was convicted of second-degree sexual offense. Sodomy constitutes a personal injury within the meaning of the policy in that sodomy is but an extremely aggravated form of assault and battery; the fact that the officer was convicted of a second-degree

sexual offense and not an offense specifically denominated "assault and battery," and that assault and battery is not a lesser included offense of sodomy (second-degree sexual offense), is not determinative.

## 2. Insurance— coverage—sexual assault by police officer— arising out of performance of duties

The trial court correctly granted summary judgment for defendant in a declaratory judgment action to determine whether the City's insurance policy provided coverage for a sexual assault commited by a police officer where the policy provided coverage for personal injury arising out of the performance of the insured's duties. Although plaintiffs argue that "arising out of" is akin to "during and in the course of," the phrase "in the course of employment" requires that an employee be acting in furtherance of his employer's business, while "arising out of" requires only a causal nexus between the officer's law enforcement duties and the resultant unlawful conduct. A liberal construction of the policy and application of the ordinary meaning of "arising out of" requires the conclusion that, but for the officer's position as an officer, he would not have had the opportunity to enter plaintiff's home, conduct a partial investigation of a reported break-in, and later sexually assault her.

## 3. Insurance— coverage—sexual assault by police officer— conflicting provisions

The trial court correctly granted summary judgment for defendant in a declaratory judgment action to determine whether the City's insurance policy provided coverage for a sexual assault commited by a police officer where provisions of the policy allowed coverage for the assault but excluded coverage for "willful violation of a penal statute." Such ambiguity will be strictly construed in favor of providing coverage to the insured.

Appeal by plaintiffs from judgment entered 10 April 1997 by W. Russell Duke, Jr. in Pitt County Superior Court. Heard in the Court of Appeals 15 January 1998.

*Ward and Smith, P.A., by Kenneth R. Wooten and R. Stephen Camp, for plaintiffs-appellants.*

*James G. Billings for defendant-appellee Connie Lorraine Smith Haywood.*

TIMMONS-GOODSON, Judge.

This declaratory judgment action arises out of a sexual assault upon defendant Connie Lorraine Smith Haywood by an employee of plaintiff City of Greenville, North Carolina (hereinafter "City"). On 29 August 1993, Ms. Haywood was sexually assaulted when defendant Donald Wade Foster, a City police officer, was dispatched to her apartment to investigate a break-in. After conducting a partial investigation of the break-in, defendant Foster sodomized Ms. Haywood. Foster was subsequently found guilty of second degree sexual offense in violation of section 14-27.5(a) of the North Carolina General Statutes, and is presently incarcerated.

In August 1994, Ms. Haywood initiated a personal injury action (94CVS8309) against Foster for injuries sustained during the 29 August 1993 sexual assault. The City is not a party to Ms. Haywood's action against Foster. Further, default judgment has been entered against Foster in that action.

In November 1995, plaintiffs City and National Casualty Company (hereinafter "National") instituted this declaratory judgment action and, subsequently, moved for summary judgment, denying that National provided coverage for the sexual assault of Ms. Haywood and that it had a duty to defend Foster in Ms. Haywood's civil action. Notably, default judgment was also entered against Foster in the instant case. Ms. Haywood filed a "response" to plaintiffs' complaint, and thereafter, a cross-motion for summary judgment. Both parties' motions were heard by Judge W. Russell Duke, Jr. during the 7 April 1997 civil session of Pitt County Superior Court. By judgment entered 10 April 1997, Judge Duke granted Ms. Haywood's motion for summary judgment and denied plaintiffs' motion. Plaintiffs appeal.

[1] Plaintiffs bring forth but one assignment of error on appeal, by which they argue that the trial court erred in holding that National's insurance policy provides coverage for sodomy. For the reasons discussed herein, we conclude that there are no genuine issues of fact remaining for trial in this matter, and accordingly, this case may be appropriately decided by summary judgment. Further, we conclude that National's policy provides coverage for Foster's 29 August 1993 sexual assault of Ms. Haywood, and accordingly, affirm the entry of summary judgment for Ms. Haywood.

In September 1992, the City purchased an insurance policy from National. This policy, which was in effect from 1 October 1992 through 1 October 1993, provided as follows:

> The Company [(National)] will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages because of WRONGFUL ACT(S) which result in:
>
> A) PERSONAL INJURY
>
> B) BODILY INJURY
>
> C) PROPERTY DAMAGE
>
> caused by an OCCURRENCE and *arising out of the performance of the INSURED'S duties to provide law enforcement and/or other departmentally approved activities, as declared in the Application* . . . .

"Insured" is defined in the policy to "mean[] the NAMED INSURED [i.e., plaintiff City] and all full or part-time and all auxiliary or volunteer law enforcement officers of the NAMED INSURED." In addition, the term "occurrence" is defined as "an event, including continuous or repeated exposure to conditions, which results in PERSONAL INJURY, BODILY INJURY or PROPERTY DAMAGE sustained, during the policy period, by any person or organization and arising out of the INSURED'S law enforcement duties." Finally, the policy's definition of "personal injury" includes assault and battery. However, the policy expressly excludes coverage for "damages arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any INSURED[.]"

In deciding whether these above-listed provisions of National's policy afford coverage for Ms. Haywood's 29 August 1993 sexual assault, we are guided by well-established rules of insurance policy construction. First, "an insurance policy is a contract between the parties which must be construed and enforced according to its terms." *Graham v. James F. Jackson Assoc. Inc.*, 84 N.C. App. 427, 430, 352 S.E.2d 878, 880 (1987) (citing *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 152 S.E.2d 436 (1967)). The court is obliged to use the definitions supplied in the policy to determine the meaning of words contained in that policy. *Durham City Bd. of Education v. National Union Fire Ins. Co.*, 109 N.C. App. 152, 156, 426 S.E.2d 451, 453 (1993) (quoting *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970)). "In the absence of such definition[s], nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech [.]" *Id.* (quoting *Wachovia Bank & Trust Co.*, 276 N.C. at 354, 172 S.E.2d at 522).

CITY OF GREENVILLE v. HAYWOOD

[130 N.C. App. 271 (1998)]

"An ambiguity exists when the language used in the policy is susceptible to different, and perhaps conflicting, interpretations." *McLeod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283, 290, 444 S.E.2d 487, 492, *disc. review denied*, 337 N.C. 694, 448 S.E.2d 528 (1994). Any ambiguity must be strictly construed in favor of the insured. *Maddox v. Insurance Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981). " 'Exclusions from and exceptions to undertakings by the company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy.' " *Durham City Bd. of Education*, 109 N.C. App. at 156, 426 S.E.2d at 453 (quoting *Maddox*, 303 N.C. at 650, 280 S.E.2d at 908).

It is uncontroverted that Foster is an "insured" within the provision of the National Casualty policy. However, plaintiffs contend that the 29 August 1993 sexual assault on Ms. Haywood does not constitute an "occurrence" within the meaning of National's policy.

First, plaintiffs argue that sodomy is not a personal injury as defined by the subject insurance policy. Ms. Haywood's complaint in her personal injury action alleges that Foster sodomized her, and that he was subsequently tried and found guilty of a second degree sexual offense in violation of section 14-27.5 of the General Statutes. While plaintiffs maintain otherwise, sodomy (a second degree sexual offense) does constitute a "personal injury" within the meaning of National's policy.

There may be both a civil and criminal action filed against one who commits an assault and battery. A "battery" is the offensive touching of the person of another without his/her consent, while an "assault" occurs when a person is put in apprehension of harmful or offensive contact, without any actual contact. *Ormond v. Crampton*, 16 N.C. App. 88, 191 S.E.2d 405 (1972); *see also State v. Britt*, 270 N.C. 416, 154 S.E.2d 519 (1967) (defining criminal "assault and battery," which violates now N.C. Gen. Stat. § 14-33 (Cum. Supp. 1997)). It then necessarily follows that sodomy is but an extremely aggravated form of "assault and battery," which is defined to be a "personal injury" in National's policy. *See State v. Wortham*, 80 N.C. App. 54, 341 S.E.2d 76 (1986) (discussing assault on a female and attempted rape); *State v. Richardson*, 279 N.C. 621, 185 S.E.2d 102 (1971) (discussing the aggravated nature of felonious assault); *State v. James*, 321 N.C. 676, 365 S.E.2d 579 (1988) (discussing aggravated nature of assault with deadly weapon). The fact that Foster was convicted of a second degree sexual offense, and not an offense specifically denominated an "assault and battery," and that assault and battery is not a lesser

included offense of sodomy, i.e., second degree sexual offense, is not determinative in this case. Therefore, this argument fails.

**[2]** Plaintiffs next contend that Ms. Haywood's sexual assault did not "arise out of the performance of the INSURED'S law enforcement duties." Significantly, plaintiffs use the phrases "arise out of" and "in the scope of" interchangeably. The two phrases are, however, quite distinct.

While policy provisions excluding coverage are strictly construed in favor of the insured, those provisions which extend coverage "must be construed liberally so as to provide coverage, whenever possible by reasonable construction." *State Capital Insurance Co. v. Nationwide Mutual Insurance Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). Because the policy does not define "arising out of," we must apply the ordinary meaning of this phrase. *See Durham City Bd. of Education*, 109 N.C. App. at 156, 426 S.E.2d at 453 (quoting *Wachovia Bank & Trust Co.*, 276 N.C. at 354, 172 S.E.2d at 522). In *State Capital Ins.*, the North Carolina Supreme Court interpreted the meaning of the term "arising out of," as used in a compulsory insurance statute and as applied to an automobile insurance policy and applied a liberal construction. 318 N.C. 534, 350 S.E.2d 66. Therein, the Supreme Court noted:

> The words "arising out of" are not words of narrow and specific limitation but are broad, general, and comprehensive terms affecting broad coverage. They are intended to, and do, afford protection to the insured against liability imposed upon him for all damages caused by acts done in connection with or arising out of such use. They are words of much broader significance than "caused by." They are ordinarily understood to mean . . . "incident to," or "having connection with" the use of the automobile.

*Id.* at 539, 350 S.E.2d at 69 (quoting *Fidelity & Casualty Co. of N.Y. v. N.C. Farm Bureau Mutual Insurance Co.*, 16 N.C. App. 194, 198-99, 192 S.E.2d 113, 118, *cert. denied*, 282 N.C. 425, 192 S.E.2d 840 (1972)).

Plaintiffs argue for a construction of this phrase "arising out of" that is akin to that of "during and in the course (or scope) of" phraseology employed in workers' compensation cases. We find this argument to be unpersuasive. Black's Law Dictionary provides:

> The words "arising out of employment" refer to the origin of the cause of the injury, while "course of employment" refers to the

time, place, and circumstances under which the injury occurred. An injury arises "out of" employment if it arises out of nature, conditions, obligations and incidents of the employment.

Black's Law Dictionary 99 (5th ed. 1979). Moreover, in *Saala v. McFarland*, 403 P.2d 400 (Cal. 1965), the California Supreme Court noted that although the two phrases, "scope of employment" and "arising out of employment" were often used interchangeably, they are not the same—"one is narrower than the other: Conduct is within the scope of employment only if the employee is actuated by an intent to serve his employer." 2 Witkin, Summary of Cal. Law (9th ed. 1987) *Workers' Compensation*, § 63, p. 622 (discussing *Saala*, 403 P.2d 400).

The facts in the case *sub judice* tend to show that Foster presented himself to Ms. Haywood after being dispatched to her residence to investigate a break-in, during and in the course of his employment with the City of Greenville Police Department. Foster traveled to Ms. Haywood's apartment in an official police vehicle and was fully attired in an official police uniform, carrying with him a gun, badge, etc. issued by the police department. Because of his status as an investigating police officer, Foster gained access to Ms. Haywood's apartment. After gaining access to Ms. Haywood's apartment, Foster and another officer conducted a partial investigation. When, however, the other officer left Ms. Haywood's apartment, Foster sexually assaulted Ms. Haywood. Foster, at the time of the 29 August 1993 incident, was performing his duties as a police officer and took advantage of his position as an officer to accomplish his own ends—the sexual assault of Ms. Haywood.

A liberal construction of National's policy, and application of the ordinary meaning of the phrase "arising out of" requires a conclusion that Foster's sexual assault did indeed "arise out of the performance of [his] law enforcement duties," as "but for" Foster's position as a City of Greenville police officer, Foster would not have had an opportunity to enter Ms. Haywood's home, conduct a partial investigation of the reported break-in, and later sexually assault her. The phrase "in the course of employment" requires that an employee be acting in furtherance of his employer's business. However, the phrase "arising out of" does not pose such a requirement; it only requires a causal nexus between Foster's law enforcement duties and the resultant unlawful conduct. *See State Capital Ins. Co.*, 318 N.C. at 539, 350 S.E.2d at 69; *see also Mary M. v. City of Los Angeles*, 814 P.2d 1341 (1991) (holding that a police officer was "acting within the scope of his employ-

ment" when he raped a motorist). Finding the requisite connection between Foster's employment as a police officer and Ms. Haywood's sexual assault, we must conclude that the assault was an "occurrence" within the meaning of National's policy.

[3] In light of our previous conclusions that sodomy is an assault and battery within the provisions of National's policy, and that Foster's sodomy of Ms. Haywood was an "occurrence" within the meaning of that policy, we also conclude that the provisions allowing coverage for an assault and battery, but excluding coverage for "willful violation of a penal statute" are in conflict "as to make it virtually impossible for either an insured or a beneficiary to determine precisely which perils are covered and which are not." *Graham*, 84 N.C. App. at 431, 352 S.E.2d at 881. For example, National's policy purports to afford coverage for an assault and battery, a criminal act pursuant to section 14-33 of our General Statues, but then purports to exclude coverage for "intentional violation of a penal statute." Such ambiguity will be strictly construed in favor of providing coverage to the insured. *See id.* (holding that a policy providing coverage for negligently inflicted bodily injury, but excluding coverage for claims arising out of any criminal act, to be fatally ambiguous); *Lincoln Nat. Health and Cas. Ins. Co. v. Brown*, 782 F. Supp. 110, 113 (M.D. Ga. 1992) (holding that a policy providing coverage for "personal injury" including false arrest, malicious prosecution, and assault and battery, but excluding intentional and expected personal injury, to be "complete nonsense"); *Titan Indem. Co. v. Riley*, 641 So.2d 766 (Ala. 1994) (holding that a policy providing coverage for claims brought under the Federal Civil Rights Act and acts of malicious prosecution, assault and battery, wrongful entry, piracy, and other offenses that require proof of intent, but precluding coverage for intentional acts to be fatally ambiguous); *Isdoll v. Scottsdale Ins. Co.*, 466 S.E.2d 48, 50 (Ga. Ct. App. 1995) (holding that a policy providing coverage for assault and battery and violation of a person's civil rights pursuant to 42 U.S.C. § 1981, *et seq.* or state law, but excluding "damages arising out of the wilful violation of a penal statute or ordinance committed by or with the knowledge or consent of any INSURED" to be fatally ambiguous), *cert. denied*, 219 Ga. Ct. App. 912, —— S.E.2d —— (1996). We, therefore, further conclude that the policy's exclusion clause does not operate to preclude coverage for Foster's 29 August 1993 sexual assault on Ms. Haywood.

In light of all of the foregoing, we hold that National's policy did provide coverage for the 29 August 1993 sexual assault of Ms.

Haywood and that National did have a duty to defend Foster in Ms. Haywood's action against him. Accordingly, we affirm the entry of summary judgment in this matter.

Affirmed.

Judges LEWIS and McGEE concur.