CHRISTOPHER YOUNG, Plaintiff v. GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., CITY OF FAYETTEVILLE, APRIL S. WORTHAM, OPHELIA PECHIE, AND SHANNON STECK PEELE, Defendants

No. COA02-1491

(Filed 6 January 2004)

**Insurance— law enforcement liability—occurrences arising from law enforcement**

A law enforcement liability insurance policy provided liability coverage for sexual assaults by a police officer despite language limiting coverage to occurrences arising out of law enforcement activities and a contention that these were not law enforcement activities. The officer would not have had the authority to detain his victims, nor the opportunity to assault them, but for his position as a police officer.

Judge HUNTER dissenting.

Appeal by defendants April S. Wortham, Ophelia Pechie, and Shannon Steck Peele, from judgment entered 5 August 2002 by Judge James F. Ammons in Cumberland County Superior Court. Heard in the Court of Appeals 27 August 2003.

*William Pereoy for the plaintiff.*

*White & Stradley, L.L.P., by J. David Stradley for the defendant-appellants.*

*Cranfill, Sumner & Hartzog, L.L.P., by Susan K. Burkhart for the defendant-appellee, Great American Insurance Company of New York.*

*Womble, Carlyle, Sandridge & Rice, P.L.L.C., by Mark Davis for the defendant, City of Fayetteville.*

ELMORE, Judge.

Plaintiff originally sued for declaratory judgment to determine rights to insurance coverage for a Fayetteville police officer to defend against suit by victims of sexual assault. Appellants are the female victim defendants; appellee is the defendant insurance company.

The appellants assigned error to the order dated 5 August 2002 granting summary judgment to Great American. In their brief the appellants argue that summary judgment was inappropriate for two reasons: first, that Great American was obligated to provide coverage under its Law Enforcement Liability Policy; and, second, that Great American was obligated by its General Liability Policy.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). On appeal, the standard of review is (1) whether there is a genuine issue of material fact and (2) whether the movant is entitled to judgment as a matter of law. *See Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). The evidence presented is viewed in the light most favorable to the non-movant. *See Caldwell v. Deese*, 288 N.C. 375, 218 S.E.2d 379 (1975).

We turn to the appellants' first assignment of error in the trial court's decision to allow Great American to avoid its obligation to provide insurance coverage under its law enforcement liability policy.

The case of *City of Greenville v. Haywood*, 130 N.C. App. 271, 502 S.E.2d 430 (1998) controls this case, and after thoroughly considering the contract before us in light of the *Haywood* decision, we must reverse the trial court's summary judgment order.

The proper construction of insurance contracts is well-settled in our case law:

"An insurer's duty to defend suits against its insured is determined by the language in the insurance contract . . . ." The terms of an insurance policy govern the scope of its coverage, and "the intention of the parties controls any interpretation or construction of the contract . . . ." The court must use the definitions given in the policy to determine the meaning of words contained in the

policy. "In the absence of such definition[s], nontechnical words are to be given a meaning consistent with the sense in which they are used in ordinary speech. . . ."

Any ambiguity in an insurance contract must be resolved in favor of the insured. In addition, in North Carolina, "[e]xclusions from and exceptions to undertakings by the company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy."

*Durham City Bd. of Education v. National Union Fire Ins. Co.*, 109 N.C. App. 152, 156, 426 S.E.2d 451, 453 (1993) (citations omitted).

The Great American policy provided:

A. Insuring Agreement

We will pay those sums that the Insured becomes legally obligated to pay as damages because of "wrongful act(s)" which result in

1. personal injury,

2. bodily injury,

3. property damage,

caused by an "occurrence" and arising out of the performance of the Insured's duties to provide law enforcement activities.

The policy identifies "all law enforcement officers" as the "Insured." In the definitions section, it defines "wrongful acts" as:

any or all of the following

a. actual or alleged errors,

b. misstatement or misleading statement;

c. act or omission, or

d. negligent act or breach of duty,

by an Insured while performing law enforcement duties[.]

"Personal injury" is defined to include "assault and battery." An exclusion in the policy states that coverage does not apply to

"[d]amages arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any Insured . . . ."

The language of the Great American policy is the exact language of the policy in the case of *City of Greenville v. Haywood*, 130 N.C. App. 271, 502 S.E.2d 430 (1998). The facts of that case are also on point. In *Haywood*, the issue was whether coverage was provided under an insurance contract when the police officer, who was the Insured in question, responded to the victim's call to investigate a break-in and subsequently, while in her home, sexually assaulted the victim. The *Haywood* Court concluded that such a case is appropriate for summary judgment, since only issues of law remain, and that the policy did provide coverage, affirming the lower court judgment in that case. The *Haywood* opinion compels us to reverse the lower court in the case *sub judice.*

Great American argues that no coverage is provided by the Law Enforcement policy because the Insured did not commit the acts "while performing law enforcement duties," and seeks to distinguish the *Haywood* case on the basis of this language. However, in the language of the policy, as quoted above, the "insuring agreement" section of the policy defines coverage for "wrongful acts" which are caused by an occurrence and "arising out of the performance of the Insured's duties to provide law enforcement activities." The language that Great American cites in support of this distinction is found in the section of the policy defining the term "wrongful acts." As noted above, any ambiguity in an insurance contract must be resolved in favor of the insured. *Maddox v. Insurance Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981). To that end, if either language would confer coverage in this case we must recognize that language. The *Haywood* case construed the "arising out of" language in the context of an on-duty police officer's sexual assault of the victim as follows:

> After gaining access to Ms. Haywood's apartment, Foster [the insured officer] and another officer conducted a partial investigation. When, however, the other officer left Ms. Haywood's apartment, Foster sexually assaulted Ms. Haywood. Foster, at the time of the 29 August 1993 incident, was performing his duties as a police officer and took advantage of his position as an officer to accomplish his own ends—the sexual assault of Ms. Haywood.

A liberal construction of National's policy, and application of the ordinary meaning of the phrase "arising out of" requires a conclusion that Foster's sexual assault did indeed "arise out of the performance of [his] law enforcement duties," as "but for" Foster's position as a City of Greenville police officer, Foster would not have had an opportunity to enter Ms. Haywood's home, conduct a partial investigation of the reported break-in, and later sexually assault her. The phrase "in the course of employment" requires that an employee be acting in furtherance of his employer's business. However, the phrase "arising out of" does not pose such a requirement; it only requires a causal nexus between Foster's law enforcement duties and the resultant unlawful conduct. *See State Capital Ins. Co.*, 318 N.C. at 539, 350 S.E.2d at 69; *see also Mary M. v. City of Los Angeles*, 814 P.2d 1341 (1991) (holding that a police officer was "acting within the scope of his employment" when he raped a motorist). Finding the requisite connection between Foster's employment as a police officer and Ms. Haywood's sexual assault, we must conclude that the assault was an "occurrence" within the meaning of National's policy.

*City of Greenville v. Haywood*, 130 N.C. App. 271, 277-78, 502 S.E.2d 430, 434 (1998).

We likewise conclude that the assaults in the case *sub judice* were "occurrence[s]" within the meaning of the Great American Law Enforcement policy. While the officer was certainly not performing a service to society in sexually assaulting the victims, "but for" his position as a police officer he would not have had the authority to detain the women, nor the opportunity to assault them.

Because we hold that coverage is provided under the Law Enforcement policy, we do not reach appellants' second argument pertaining to the General Liability policy.

Reverse and remand.

Judge TIMMONS-GOODSON concurs.

Judge HUNTER dissents by separate opinion.

HUNTER, Judge, dissenting.

Because I do not believe Christopher Young ("plaintiff") committed these sexual assaults "while performing law enforcement duties," I respectfully dissent.

At the outset, I disagree with the majority's proposition that this case is indistinguishable from *City of Greenville v. Haywood*, 130 N.C. App. 271, 502 S.E.2d 430 (1998). It is the language of the policy in this case that limits the definition of a "wrongful act" to those acts occurring "while performing law enforcement duties" that distinguishes this case from *Haywood*. This language was not at issue in *Haywood*, since the policy in that case only used the language " 'arising out of the INSURED'S law enforcement duties.' " *Id.* at 274, 502 S.E.2d at 432. In construing an insurance contract, a court should not rewrite the contract, nor disregard the express language of that contract. *N.C. Insurance Guaranty Assn. v. Century Indemnity Co.*, 115 N.C. App. 175, 179, 444 S.E.2d 464, 467 (1994). " 'All parts of a contract are to be given effect if possible. It is presumed that each part of the contract means something.' " *Id.* at 180, 444 S.E.2d at 468 (quoting *Bolton Corp. v. T.A. Loving Co.*, 317 N.C. 623, 628, 347 S.E.2d 369, 372 (1986)). The term "while" is defined as "during the time that." Webster's New Collegiate Dictionary, 1343 (9th ed. 1991). The term "perform" is defined as "carry out, do." *Id.* at 873. The combination of the terms "arising out of the performance of the Insured's duties to provide law enforcement activities" and "while performing law enforcement duties" does not create an ambiguity. Rather the terms should be construed together and the insurance policy should be read to cover acts occurring during the time the officer was carrying out his law enforcement duties and that would not have occurred but for the fact that he was a police officer. The phrase "while performing law enforcement duties" requires a contemporaneity between the acts for which coverage is sought and the performance of law enforcement duties. The intent of the policy is clear and unambiguous: it is designed to cover those wrongful acts of police officers committed as the officer is carrying out duties related to law enforcement. A sexual assault is not a law enforcement duty.

In this case, plaintiff was not performing law enforcement duties at the same time as he was sexually assaulting the victims. In each instance, plaintiff actually stopped performing law enforcement duties in order to sexually assault the three women. In one instance, plaintiff allegedly ceased an otherwise normal traffic stop and forced

**YOUNG v. GREAT AM. INS. CO. OF N.Y.**

[162 N.C. App. 87 (2004)]

the victim behind a building before assaulting her. In a second instance, plaintiff, in the middle of a routine traffic stop, allegedly pushed the victim to the ground, assaulted her, and subsequently forced her back into her car where he raped her. In the third incident, plaintiff allegedly drove the victim to an abandoned building where he sexually assaulted her.

Although it is true that none of these assaults would have happened but for the fact plaintiff was a police officer, and thus had authority to stop or detain the victims, plaintiff's actions in forcing the women to commit sexual acts were not part of his law enforcement duties. Even though each case of assault began with a traffic stop or accident investigation, plaintiff at some point in each case stopped carrying out his duties in order to commit the assaults by performing acts so completely remote from law enforcement to constitute a cessation of his job duties, either by taking the women to a place unrelated to his law enforcement duties and by repeatedly physically and sexually assaulting a victim. Therefore, none of the assaults were committed as plaintiff actually carried out any duty of law enforcement.[1] These assaults were not committed while plaintiff was carrying out the public duties of a law enforcement officer, but rather they were committed while he was serving his own personal and reprehensible purposes for which he may be charged criminally and sued in his individual capacity. Thus, I would conclude that there is no coverage for plaintiff's assaults under the law enforcement liability policy.

Furthermore, although the majority opinion does not reach this issue, I would also conclude that the intentional sexual assaults were not within the scope of plaintiff's employment, and thus, the general liability policy also does not provide coverage for plaintiff's assaults on the three women. *See Medlin v. Bass,* 327 N.C. 587, 594, 398 S.E.2d 460, 464 (1990) (where assault by an employee cannot have been in furtherance of employer's business, the assault is not within course and scope of employment). Accordingly, I would affirm the judgment of the trial court.

---

1. Examples of acts that would be covered under the insurance policy would include using excessive force during an arrest or assaulting a suspect during an interrogation.