***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission hereby REVERSES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
4. The compensation carrier on the risk in this claim was Stonewood Insurance Company.
5. The Plaintiff alleges to have sustained a compensable injury to the entire left side of her body including her face, head, left eye, and left leg, on April 6, 2009.
6. Defendants denied this claim and contend that Plaintiff's claim is not compensable under the Workers' Compensation Act.
7. An employment relationship existed between the employee and employer on April 6, 2009.
8. The employee's average weekly wage is $254.19, yielding a compensation rate of $169.46 (subject to verification by the Form 22 Wage Chart).
9. The parties also stipulated to the following Exhibits:
 a. The Pre-Trial Agreement, marked Stipulated Exhibit 1.
 b. An indexed set of paginated documents, including medical records, Industrial Commission forms, and recorded statement, collectively marked Stipulated Exhibit 2. *Page 3 
 c. Exhibits 1 through 3 attached to Defendants' brief, consisting of an MRI report and two additional reports from Dr. Zucker, all generated after Deputy Commissioner Baddour filed his Opinion and Award.
 ***********
Based upon the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was forty-two years old at the hearing before the Deputy Commissioner. She is from Mexico, where she attended school for only two years. She does not speak English and had difficulty communicating with others at the hearing, even though she was testifying with the help of an interpreter. Plaintiff has never performed a job that did not involve standing, kneeling and squatting.
2. Plaintiff was employed by Defendant-Employer as a janitor. Her job duties included basic cleaning, including sweeping floors and cleaning bathrooms and windows. In addition, she would sometimes be asked to help out in another capacity, such as machine operator.
3. On April 6, 2009, Plaintiff's supervisor asked her to help unload rolls of fabric that were stacked inside a trailer. To accomplish this, Plaintiff and her co-workers placed rolls of fabric of varying sizes onto a large metal rack, which in turn was carried out of the truck on a forklift. In the course of doing this, Plaintiff noticed and commented to a co-worker that it looked like the fabrics were going to fall over. As she bent down to pick up one of the rolls that had already fallen off the rack, she looked up and noticed that the rack was falling on her. As it fell, the rack hit Plaintiff across her left upper arm, causing an abrasion. Plaintiff then fell down *Page 4 
onto the rolls of fabric that were strewn about the floor of the trailer. In addition, several rolls of fabric fell off the rack and struck Plaintiff on her left lower extremity.
4. Plaintiff was frightened when this incident occurred and became jittery and short of breath. At Defendant-Employer's behest she was transported to Stanly Regional Medical Center via ambulance.
5. The medical records from Plaintiff's admission to the Emergency Department at Stanly Regional Medical Center reflect that Plaintiff had some difficulty communicating with hospital personnel. It was initially recorded that Plaintiff "suddenly got weak today and she fell to the ground." The history also indicated that Plaintiff had suffered a stroke six months earlier. When Plaintiff's daughter, who does speak English, arrived at the hospital, she advised the attending physician that Plaintiff "did not become weak she was struck by a falling rack. She also did not have a stroke in the past." The doctor's note goes on to state that "per her daughter the patient becomes very scared and her anxiety presents as weakness."
6. While in the emergency room, Plaintiff asked the doctor why her left leg felt weak. However, she did not complain of left leg or left knee pain at that time. Her complaints of pain at that time involved her back, neck and left arm. She was discharged with a diagnosis of "contusion arm upper" after the bleeding was controlled and pressure dressing applied. She was also given 0.5 mg Xanax while in the emergency room as well as a prescription for Xanax to take following her discharge.
7. Plaintiff was also given a Work Release Form which advised her to return to work without restrictions in two days. The note indicated that if Plaintiff was unable to perform the full duties of her job she should follow up with a physician for further evaluation. *Page 5 
8. Plaintiff returned to work for two days after missing approximately four days. She worked only partial hours and was observed by her supervisor to walk very slowly with a limp. Plaintiff found that she was not able to perform the duties of her job and has not returned to work for Defendant-Employer or any other employer since then.
9. On April 14, 2009, the adjuster assigned to this claim took a recorded statement during which Plaintiff reported that she was having problems with her left lower extremity as well as her left arm.
10. On April 7, 2009, Defendant-Employer completed a Form 19 which indicated that the rack had hit plaintiff on her left forearm and that Plaintiff had suffered a "nervous reaction" approximately 15 minutes after the accident.
11. On April 20, 2009, Plaintiff completed a Form 18 with the assistance of an English-speaking neighbor. Plaintiff indicated on the Form 18 that she had injured her "left side from head to toes" on April 6, 2009.
12. On April 28, 2009, Defendants filed a Form 61 denying Plaintiff's claim. One of the reasons given for the denial was that Plaintiff had not sustained an injury by accident.
13. On June 12, 2009, Plaintiff was seen at the Stanly County Health Department for complaints of left knee pain that started two months earlier following an injury at work involving a forklift. She reported increased pain with weight-bearing. On exam she exhibited slight tenderness laterally on the knee with trace swelling but no instability or crepitus. She was advised to rest and elevate her leg and was given a prescription for Naproxen. 14. After Plaintiff retained legal counsel she was seen by Dr. Joseph Zucker at Albemarle Ortho and Sports Medicine on August 24, 2009. Dr. Zucker ordered an MRI to determine if there was any evidence of internal derangement in the knee. Plaintiff could not *Page 6 
afford to have the MRI performed prior to the hearing in this case before Deputy Commissioner Baddour on June 3, 2010.
15. As of the date of the hearing before Deputy Commissioner Baddour, Plaintiff's left arm was fine but her left leg continued to be a problem for her. She continued to find it very hard to squat or kneel, she couldn't walk upstairs without assistance, and she had to sit down and rest after twenty minutes of standing.
16. When Dr. Zucker was deposed in this matter on August 11, 2010, he stated that Plaintiff probably sprained her left knee and that it would be hard to tell if Plaintiff could return to work without an MRI of the left knee. Dr. Zucker also testified that if he had seen Plaintiff when she tried to return to work, he would be in a better position to evaluate Plaintiff's subjective complaints of pain at that time, but looking back on it without the benefit of an MRI, he would recommend that she use her leg as tolerated.
17. After Deputy Commissioner Baddour filed an Opinion and Award finding the left knee claim compensable, Defendants paid for Plaintiff to undergo an MRI of the left knee, the results of which were normal in all respects. On May 4, 2011, Plaintiff returned to Dr. Zucker, who advised at that time that Plaintiff had reached maximum medical improvement and that it was medically safe for Plaintiff to return to all activities as tolerated. Dr. Zucker also opined that Plaintiff did not retain any permanent partial disability as a result of the April 6, 2009 accident.
18. On April 6, 2009, Plaintiff sustained injuries to her left arm and left lower extremity arising out of and in the course of her employment with Defendant-Employer when the rack containing rolls of fabric of varying sizes fell off the forklift. This incident constituted an interruption of her regular work routine. *Page 7 
19. As a result of the incident that occurred with the rack in the trailer, Plaintiff became extremely frightened and anxious, which in turn prompted Defendant-Employer to send her to the Emergency Room via ambulance.
20. All of the medical treatment Plaintiff received in the Emergency Room, including that which she received for her feelings of shortness of breath, was causally related to the incident that occurred in the trailer on April 6, 2009.
21. Plaintiff's complaints of pain and weakness involving the lower extremity following the April 6, 2009 accident are accepted as credible.
22. As a result of the April 6, 2009 accident, Plaintiff was unable to earn the same wages she was earning at the time of the injury in the same or any other employment from the date of injury to May 4, 2011.
23. Plaintiff retains no permanent partial impairment to her left arm or left leg as a result of the April 6, 2009 accident.
24. In the Pretrial Agreement, the parties stipulated to an average weekly wage of $254.19, subject to wage chart verification. Based upon the stipulated Form 22 wage chart, Plaintiff's average weekly wage can be calculated by dividing her gross wages of $13,217.75 by 47 weeks, which is the number of weeks remaining after deducting those periods (thirty-six days) during which she lost more than seven consecutive days during the fifty-two weeks prior to the date of injury. Plaintiff's correct average weekly wage as verified by the wage chart is $281.23, which generates a compensation rate of $187.50.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following additional: *Page 8 
 CONCLUSIONS OF LAW
1. On April 6, 2009, Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer, resulting in a contusion to her left arm, a sprain to her left knee, and transient anxiety. N.C. Gen. Stat. § 97-2(6).
2. As a result of the April 6, 2009 injury by accident, Plaintiff was totally disabled from the date of injury to May 4, 2011. N.C. Gen. Stat. § 97-29. ". . . [A]n employee's own testimony as to pain and ability to work is competent evidence as to the employee's ability to work" and may be considered by the Industrial Commission in determining whether the employee has met her burden of proving disability. See Byrd v. Ecofibers, Inc.,182 N.C. App. 728, 645 S.E.2d 80, disc. review denied,361 N.C. 567, 650 S.E.2d 599 (2007), citing Boles v. U.S. Air,Inc., 148 N.C. App. 493, 560 S.E.2d 809 (2002); see, also,Knight v. Wal-Mart Stores, 149 N.C. App. 1, 502 S.E.2d 434 (2002).
3. Some issues regarding medical treatment do not require expert medical testimony because they do not involve ". . . complicated medical questions far removed from the ordinary experience and knowledge of laymen. . . ." Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). Plaintiff's fear and anxiety immediately following the April 6, 2009 accident were apparent to her supervisor and prompted Defendant-Employer to have Plaintiff transported to the Emergency Room. The ambulance ride to the emergency room and the treatment Plaintiff received at the hospital on April 6, 2009 were causally related to the injury she sustained at work that day. Defendants are therefore responsible for paying for that medical treatment, as well as for the treatment she received at the Stanly County Health Department on June 9, 2009 and the visit to Dr. Zucker's office on August 24, 2009. N.C. Gen. Stat. § 97-25. *Page 9 
4. Based upon the stipulated Form 22 wage chart, Plaintiff's average weekly wage can be calculated by dividing her earnings by the number of weeks remaining after deducting the time for periods where she lost more than seven consecutive days, which generates an average weekly wage of $281.23, which equates to a weekly compensation rate of $187.50. N.C. Gen. Stat. § 97-2(5).
5. Plaintiff has reached maximum medical improvement but does not retain any permanent partial disability to her left arm or left leg and therefore is not entitled to any compensation pursuant to N.C. Gen. Stat. § 97-31.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay Plaintiff temporary total disability benefits from April 6, 2009 to May 4, 2011, at the rate of $187.50 per week. This compensation has accrued and shall be paid to Plaintiff in a lump sum, subject to the attorney fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by Plaintiff for treatment of the April 6, 2009 injury, as outlined above.
3. An attorney fee of twenty-five percent of the compensation awarded is hereby approved for Plaintiff's counsel and shall be paid directly to him by deducting twenty-five percent from the lump sum due Plaintiff and forwarding it directly to Plaintiff's counsel.
4. Defendants shall pay the costs due the Commission.
This the ___ day of July 2011. *Page 10 
 S/___________________ TAMMY R. NANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1