WESTFIELD INSURANCE COMPANY, Appellee,

v.

HEALTHOHIO, INC., Appellant.

[Cite as *Westfield Ins. Co. v. HealthOhio, Inc.* (1992), 73 Ohio App.3d 341.]

Court of Appeals of Ohio,
Marion County.

No. 9-91-13.

Decided Jan. 6, 1992.

*Baran, Piper, Tarkowsky & Fitzgerald* and *Edward C. Baran,* for appellee.

*Baker, Hackenberg & Collins* and *James M. Speros,* for appellant.

THOMAS F. BRYANT, Presiding Judge.

This is an appeal from a summary judgment entered by the Court of Common Pleas of Marion County declaring the absence of appellee Westfield Insurance Company's duty pursuant to the terms of its insurance policy to defend appellant HealthOhio, Inc. ("HealthOhio") in certain litigation.

HealthOhio is a health maintenance organization, or HMO, providing a prepaid physician care plan to subscribers. It has contracted with another corporation, Comprehensive Family Health Care, Inc. ("CFHC"), to be the exclusive provider of the services of physicians to persons covered by Health-

Ohio's plan. Ronald A. Landefeld, M.D. contracted with CFHC to supply his services as a physician to HealthOhio subscribers.

Because CFHC terminated its contract with Dr. Landefeld, HealthOhio notified its subscribers it would no longer accept from them for payment billings for Dr. Landefeld's medical services. Landefeld and some of his HealthOhio patients then sued CFHC and others including HealthOhio.

The allegations of the complaint by Landefeld and his patients against HealthOhio were claims for its claimed breach of contract with its subscribers, and for interference with physician-patient relationships caused by and threatened to be caused by that breach of contract, all resulting in anxiety, stress and inconvenience, for intentional, malicious conduct, and for restraint of trade.

All the claims of Landefeld's complaint were based on an allegation of the wrongful termination of his physician services by HealthOhio.

HealthOhio gave to its insurer, Westfield Insurance Co. ("Westfield"), notice of the Landefeld suit and demanded that Westfield provide a defense to the action under the terms of HealthOhio's Westfield business liability insurance policy. Westfield denied it owed a contractual duty to defend HealthOhio in the action.

After successfully defending itself in the Landefeld action, HealthOhio called upon Westfield to pay the costs of that defense. Westfield again denied liability coverage for the Landefeld claims and reasserted its denial of a duty to defend HealthOhio. Westfield then brought this action for declaration that it owed to HealthOhio no duty to defend it against the Landefeld claims.

Upon the parties' cross-motions for summary judgment, the trial court granted that of Westfield, declaring that "Westfield Insurance Company owed no duty to defend HealthOhio, Inc., under the provisions of its policy * * *, in the underlying case of *Ronald A. Landefeld, et al., v. HealthOhio, Inc., et al.,* Case No. 90CI–407."

HealthOhio offers three assignments of error for our review. We address the first and third assignments together because of the common legal issue they present:

"I. The trial court erred to the prejudice of appellant by failing to find that Westfield was obligated to at least defend HealthOhio pursuant to the plain terms of the policy."

"III. The trial court erred to the prejudice of appellant by failing and refusing to enter judgment in favor of HealthOhio and against Westfield for the amount of attorneys' fees and expenses incurred in the underlying case, as

well as the amount of the attorneys' fees and expenses incurred in prosecuting this action."

In defining an insurer's contractual duty to defend its insured, the Supreme Court of Ohio, in *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, syllabus, stated:

"Where the insurer's duty to defend is not apparent from the pleadings in the action against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage has been pleaded, the insurer must accept the defense of the claim."

The Supreme Court refined the rule in *Wedge Products, Inc. v. Hartford Equity Sales Co.* (1987), 31 Ohio St.3d 65, 68, 31 OBR 180, 182, 509 N.E.2d 74, 76, stating:

"*Willoughby Hills*, however, does not require a defense where the complaint contains no allegation that states a claim 'potentially or arguably within the policy coverage.'"

The Westfield business liability policy in suit provides coverage as follows:

"A.  COVERAGES

"1.  Business Liability.  We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' 'personal injury' or 'advertising injury' to which this insurance applies.  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for * * *.

"a.  This insurance applies only:

"(1) To 'bodily injury' or 'property damage':

"(a) That occurs during the policy period;  and

"(b) That is caused by an 'occurrence.'  The 'occurrence' must take place in the 'coverage territory.'

"(2) To 'personal injury' caused by an offense:

"(a) Committed in the 'coverage territory' during the policy period;  and

"(b) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting done by you or for you.

"(3) To 'advertising injury' caused by an offense committed:

"(a) In the 'coverage territory' during the policy period;  and

"(b) In the course of advertising your goods, products, or services.

"b.  We will have the right and duty to defend any 'suit' seeking those damages.  * * * "

Other pertinent policy definitions respecting the terms of coverage are:

"F.   LIABILITY AND MEDICAL EXPENSES DEFINITIONS

" * * *

"3.   'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

" * * *

"9.   'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"10.   'Personal injury' means injury, other than 'bodily injury,' arising out of one or more of the following offenses:

"a.   False arrest, detention or imprisonment;

"b.   Malicious prosecution;

"c.   Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

"d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;  or

"e.   Oral or written publication of material that violates a person's right of privacy.

" * * *

"12.   'Property damage' means:

"a.   Physical injury to tangible property, including all resulting loss of use of that property;  or

"b.   Loss of use of tangible property that is not physically injured;

" * * *

"13.   'Suit' means a civil proceeding in which damages because of 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies are alleged.  * * * "

Westfield's insurance policy commits that insurer to defend "suits" seeking damages.  No express undertaking in the policy insures against HealthOhio's liability for or requires Westfield to defend "suits" seeking only injunctive relief.  Therefore, unless by their complaint plaintiffs are seeking damages for acts covered by the Westfield policy, in no other event has that insurer a duty, arguably, to defend HealthOhio against plaintiffs' claims for equitable relief.

Likewise, the Westfield policy in suit does not insure HealthOhio for its contract liability for failure to perform the obligations of its business contracts.

We do not understand any allegation of the complaint to claim injury by an offense committed in the course of advertising. Westfield policy coverage A 1 a (3), quoted above concerning "advertising injury," therefore, appears to afford to HealthOhio no right of defense by Westfield.

No property damage claim is apparent from the complaint. We do not understand appellant to contend for such an inference.

A pertinent exclusion from coverage is:

"B.  EXCLUSIONS

"1.  Applicable to Business Liability Coverage—

"This insurance does not apply to:

"a.  'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured.  * * *

" * * *

"p.  'Personal injury' or 'advertising injury':

" * * *

"3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured[.]"

■ Appellant argues that the claims of Landefeld's patients are arguably for "bodily injury" because they allege "anxiety" and "stress," resulting from HealthOhio's termination of authorization for submission to it by its subscribers of Langefeld's future physician's billings for HealthOhio payment.

However, assuming *arguendo* that those claims are for bodily injury, we are still foreclosed from appellant's conclusion of arguable coverage by the Westfield policy, for that policy requires that for coverage, "bodily injury" must result from an "occurrence." "Occurrence" is defined as "accident," with an ensuing term expressly excluding injury intended by the insured. Thus, we perceive that the bodily injury for which appellant contends is not potentially a subject of claim against HealthOhio arguably within insurance coverage requiring defense by Westfield.

■ Landefeld's complaint alleges that HealthOhio has interferred with the physician-patient relationship of that physician and those of his patients who subscribe to the HealthOhio physician service plan. The relational interference is claimed to result from HealthOhio's termination of Dr. Landefeld's authorization to serve as a plan-sponsored physician.

The Westfield policy definitions of "bodily injury," "property damage," and "advertising injury" by their terms do not apply to the claimed injury by interference with the professional or business relationship of Dr. Landefeld and his patients. Thus, the injury claimed, to give rise to Westfield's contractual duty to defend HealthOhio must be found to meet the definition of "personal injury" and also to fall outside the exclusions for coverage as "personal injury."

Again assuming *arguendo* that the conduct alleged may fit the Westfield policy definition of "personal injury," nevertheless, HealthOhio's termination of Dr. Landefeld's authorization to serve as a HealthOhio plan physician is alleged by the various paragraphs of the Landefeld complaint, separately and collectively by reference, to be improper, unlawful, intentional, malicious and in pursuance of an unlawful combination and conspiracy to prevent competition in and restrain trade or commerce. The injury claimed is thus alleged in the sole alternatives to be either intentional or the result of the insured's violation of Ohio penal statutes.[1] In either event, the cause of the injury is expressly excluded from the coverage of the Westfield insurance policy held by HealthOhio as shown by the policy terms quoted above.

As we noted in *Akers v. Beacon Ins. Co. of Am.* (Aug. 31, 1987), Marion App. No. 9–86–16, unreported, 1987 WL 16260, "[w]hile policies are to be construed liberally in favor of the insured, the court may not nullify the plain import of the language used or impose a liability clearly excluded."

Upon review of a trial court's judgment granting summary judgment, we are required, as was the trial court in the first instance, to determine that no genuine issue as to any material fact remains for determination. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

The claims of the complaint in suit against the insured establish the reference within which the duty of an insurer to defend its insured is to be determined. *Wedge Products, Inc. v. Hartford Equity Sales Co., supra.* The complaint and the insurance policy claimed to give rise to the duty to defend in the circumstances before us were made part of the record below. They are not disputed. Other matter properly before the trial court demonstrates that no genuine issue of material fact remains for determination.

■ Citing and relying upon *Willoughby Hills v. Cincinnati Ins. Co.* (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, the trial court next determined that Westfield as the movant was entitled to judgment as a matter of law, and to declaration that it owed no duty under its policy in suit to

---

1. R.C. 1331.01 *et seq.* provides, *inter alia,* for civil and criminal penalties for restraint of trade by combination or conspiracy.

furnish to its insured, HealthOhio, defense of the complaint in case No. 90 CI–407. For the reasons we have stated, we agree.

Because Westfield had no duty to defend HealthOhio in the underlying action, it has no duty to indemnify HealthOhio for its costs and expenses incurred on its own account for that defense. In order for HealthOhio to recover from Westfield indemnification for its costs and expenses of this declaratory judgment action by which it sought to establish its right to indemnity for defense of the underlying action, it must have shown Westfield's wrongful refusal to defend that underlying action. *Allen v. Standard Oil Co.* (1982), 2 Ohio St.3d 122, 2 OBR 671, 443 N.E.2d 497. Because the trial court found no such duty to defend in the first instance, a decision we have found to be correct, that court was also correct in its denial of HealthOhio's motion for summary judgment and in dismissing HealthOhio's claims for indemnity by Westfield.

The first and third assignments of error are overruled.

■ The second and sole remaining assignment of error is:

"The trial court erred to the prejudice of appellant by refusing to consider facts proved by the affidavits and pleadings in this case, and by limiting its factual inquiry solely to the complaint set forth in the Landefeld litigation."

In its written opinion, the trial court prefaced its analysis and discussion of the facts and issues before it, writing:

"At the outset it should be noted that the underlying case was a suit for injunctive relief and ancillary claims which was heard and decided on the merits by this Court. In deciding the declaratory judgment action the Court must disregard the 'actual facts' as presented to the court in the underlying case."

HealthOhio argues that the foregoing observation by the trial court demonstrates its failure to consider all relevant matter before it on cross-motions for summary judgment and declaration of right concerning the insurer's duty to defend its insured in the circumstances. HealthOhio also points to the trial court's further observation:

"The Court, having reviewed the policy of insurance, must then examine the allegations of the Complaint and determine under the pronouncements in *Willoughby Hills v. Cincinnati Ins. Co.,* whether a claim for relief has been stated which is potentially or arguably within the policy coverage. It is significant that Courts, including the *Willoughby Hills* Court, in expanding the test which the Trial Court must apply have stated that the rationale for the enlargement resulted from the adoption of the Rules of Civil Procedure which brought about the advent of 'notice pleading.' However the Court's

task is simplified since the underlying complaint was meticulously drafted and consists of twenty-four pages, nine claims for relief and sixty-six paragraphs. The Preliminary Statement of the Complaint sets the tenor of the action[.] * * * "

HealthOhio implies that the trial court did not consider all matter properly before it on motion for summary judgment and points to inclusion in the materials before the trial court upon motion the pleadings and memoranda in the underlying case. However, HealthOhio does not point to specifics of the content of the record called to the trial court's attention and ignored by it to appellant's prejudice, nor does it explain how the trial court's consideration of such would have changed the trial court's ruling, nor does it demonstrate any other resulting prejudice.

We, having reviewed the materials before the trial court upon motion and having reached the same conclusion reached below, presume the trial court acted in accordance with law, in the absence of appellant's specific showing of error and resulting prejudice.

As we read the trial judge's comments in their original context, it is apparent that those comments are not meant to limit the court's scope of inquiry, but are meant, rather, and commendably, to assure that the court's extraneous knowledge of the evidence heard and of the result reached on the trial of the underlying action did not taint the trial court's consideration in the summary judgment proceeding. As noted by the trial court, the particularity of the complaint document in the underlying action leaves little for speculation about the scope of its claims, or to be supplied by additional documentation or argument.

The second assignment of error is also overruled.

The judgment of the Common Pleas Court of Marion County is affirmed.

*Judgment affirmed.*

HADLEY and EVANS, JJ., concur.