DECISION.
{¶ 1} In this insurance-coverage dispute, the insured claims coverage. Unsurprisingly, the insurance companies disclaim any coverage.
 {¶ 2} Plaintiff-appellant the city of Sharonville and third-party defendants-appellants Michael Schappa, James Cramer, and William Nuss (collectively, "Sharonville") appeal the trial court's entry of summary judgment for defendants-appellees American Employers Insurance Co. and State Auto Insurance Co. (together, "General Liability Insurers"), and Scottsdale Insurance Co., United National Insurance Co., Folksamerica Reinsurance Co., Ohio Government Risk Management Plan, and North East Insurance Co. (collectively, "LEL [for `Law-Enforcement Liability'] Insurers").
 {¶ 3} We affirm the summary judgment in favor of the General Liability Insurers but reverse as to the LEL Insurers.
 I. The Federal Action {¶ 4} Sharonville, its police officers and employees, and others were sued in the United States District Court for the Southern District of Ohio by Patricia Kammeyer and other relatives of two murder victims ("the Kammeyer action"). Former police officer James Cramer and former police chief William Nuss were named defendants in the Kammeyer action. The current police chief, Mike Schappa, was also a named defendant. The individual defendants were sued in their professional and personal capacities.
 {¶ 5} The Kammeyer action arose from the alleged cover-up of a 1981 murder. Albert J. Schuholz Jr., was a loan shark who had allegedly employed Officer Cramer as a collection agent. Schuholz's ex-wife, Marie, and her friend Starla Burns were murdered in their apartment in May 1981. Chief Nuss assigned Officer Cramer to the investigation. Schuholz was suspected of hiring someone to kill Marie and Starla. But the case was never solved. Schuholz later pleaded guilty to the attempted murder of a subsequent wife. He is currently in a federal prison.
 {¶ 6} The Kammeyer plaintiffs continually called the Sharonville police to inquire about progress on the investigation. Officer Cramer told them that contacting the police too often would hurt the investigation.
 {¶ 7} In 1999, Chief Schappa allegedly told the Kammeyer plaintiffs that the murder investigation had been delayed by a cover-up. Schappa allegedly told them that the investigation had been delayed by an officer who had acted with criminal intent and a police chief who had covered it up. The Kammeyer plaintiffs then sued in federal court.
 {¶ 8} The Kammeyer complaint asserted four causes of action against Sharonville, Nuss, Cramer, and Schappa. Two arose under Section 1983, Title 42, U.S. Code, the federal Civil Rights Act: (1) a deprivation of civil rights, including rights of access to courts, equal protection, and due process of law; and (2) a conspiracy under color of law to destroy evidence and to cover up the role of Schuholz in the murders. The other two were state-law claims, including a conspiracy to hide evidence and the spoliation of evidence.
 {¶ 9} Sharonville carried two types of insurance: general liability insurance and law-enforcement liability ("LEL") insurance. There are seven different insurers in this action. All seven have denied coverage.
 {¶ 10} The general liability policies provide coverage when bodily injury or property damage is caused by an occurrence. An "occurrence" is defined as an accident.
 {¶ 11} The LEL policies provide coverage for personal injury, bodily injury, property damage, and punitive damages. "Personal injury" is defined as including false arrest, false imprisonment, assault, battery, or deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. An act giving rise to personal injury must be committed in the regular course of duty by the insured. "Regular course of duty" is not defined in the policies.
 {¶ 12} The policies all have a similar clause defining a duty to defend the insured. The clauses generally state that the insurer has the right and duty to defend the insured when the insured is sued for "injury" as defined by the policies, even if any of the allegations of the suit are groundless, false, or fraudulent. Thus the duty to defend is much broader than the duty to indemnify.
 {¶ 13} All of Sharonville's insurers refused to defend Sharonville in the Kammeyer action. In the action underlying this appeal, Sharonville sought in the Hamilton County Common Pleas Court a declaratory judgment that the insurers had a duty to defend Sharonville. Both parties moved for summary judgment. The trial court denied Sharonville's motion and granted the insurers' motion. On appeal, Sharonville now raises one assignment of error: that the trial court erred in denying its motion for summary judgment and in granting the insurers' motion for summary judgment.
 II. Standard of Review {¶ 14} The facts here are undisputed as they relate to the duty to defend. All parties believe they are entitled to judgment as a matter of law. All cannot be.
 {¶ 15} We review summary-judgment determinations de novo, without deference to the trial court's ruling.[1]
 {¶ 16} Summary judgment should be granted only when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can only come to a conclusion adverse to the non-moving party, when viewing the evidence in the light most favorable to the non-moving party.[2]
 III. Insurance Policy Interpretation {¶ 17} The scope of the allegations in the underlying complaint against the insured determines whether an insurer has a duty to defend.[3] Where the allegations state a claim that falls potentially or arguably within the liability insurance coverage, the insurer must defend the insured in the action.[4] But the insurer need not provide a defense if there is no set of facts alleged that would invoke coverage.[5] The duty to defend exists even though the underlying action may eventually produce a result that does not trigger the duty to indemnify under the policy.[6]
 IV. The General Liability Insurance Policies {¶ 18} Sharonville argues that the General Liability Insurers have a duty to defend because the Kammeyer action potentially falls within the scope of the general liability policies.
 {¶ 19} The general liability insurance policies are unambiguous in the scope of their coverage. The General Liability Insurers must defend and indemnify the insured when the insured is legally obligated to pay damages because of bodily injury or property damage. "Bodily injury" is defined in the policies as bodily injury, sickness, or disease. "Property damage" is physical injury or destruction to tangible property. For each policy to apply, the injury must arise from an occurrence. An "occurrence" is defined as an accident that results in injury "neither expected nor intended from the standpoint of the insured."
 {¶ 20} The scope of the allegations in the Kammeyer pleadings determines whether the General Liability Insurers have a duty to defend Sharonville.[7] The causes of action against Sharonville include federal civil-rights claims and state-law claims of conspiracy and spoliation of evidence.[8] Civil actions for claims of deprivation of rights, by their very nature, are based upon intentional conduct.[9] The Kammeyer pleadings are quite clear — they allege the intentional destruction of evidence and the purposeful hindrance of a murder investigation. These actions do not involve negligence, and thus the Kammeyer allegations do not fall within the scope of the general liability insurance policies.
 {¶ 21} Sharonville argues that the Kammeyer plaintiffs actually believe that Sharonville botched the murder investigation, and that the cause of action is essentially one of negligence. But we must look to the language of the underlying complaint to determine possible coverage.[10]
 {¶ 22} Sharonville correctly cites Preferred Risk Ins. Co.v. Gill for the proposition that an insurer may demonstrate that the allegations in the underlying action are not true, thus removing the duty to defend.[11] But Preferred Risk is a very narrow case. Sharonville seeks to use that case — a shield for insurance companies — as a sword in this case. Sharonville claims that, if an insurance company can prove underlying facts to take a case out of coverage, then the insured can do so to put the case in. This is not the case.
 {¶ 23} In Preferred Risk, the parents of a murder victim sued the murderer for negligence. The insurer in that case unequivocally established the intentional nature of the death by showing that the killer had pleaded guilty and had been convicted of aggravated murder, which, by definition, was a purposeful crime.[12] And murder is by definition not negligence. The court held that because the underlying action was so indisputably outside the policy's coverage, there was no duty to defend or indemnify, even though the underlying action alleged conduct within the insurer's coverage.[13] Preferred Risk simply stands for the proposition that a plaintiff cannot obligate an insurer to defend an insured simply by including a palpably untenable allegation in the complaint.
 {¶ 24} But the general rule — that the duty to defend is determined from the allegations in the complaint — remains. This makes sense because, until and unless a plaintiff amends his complaint, the plaintiff is allowed to prove no set of facts outside the complaint's ambit.
 {¶ 25} The Kammeyer complaint alleged intentional conduct that was not within the scope of coverage under the general liability insurance policies. The General Liability Insurers thus had no duty to defend. Therefore, we affirm the entry of summary judgment in favor of the General Liability Insurers.
 V. The Law-Enforcement Liability Policies {¶ 26} Sharonville also argues that summary judgment for the insurers was improper because the LEL Insurers have a duty to defend Sharonville in the Kammeyer action. Sharonville is correct and is entitled to summary judgment.
 {¶ 27} The LEL policies all contain similar language. They all provide a duty to defend (and possibly indemnify) the insured for wrongful acts resulting in personal injury, bodily injury, or property damage. Some of the policies also insure against punitive damages.
 {¶ 28} Sharonville now argues that the Kammeyer pleadings alleged a coverable injury. The policies require a wrongful act giving rise to an injury. A "wrongful act" is defined as an "error, misstatement, omission, neglect, or a breach of duty by the insured." Each policy defines "personal injury" to include intentional torts such as "false arrest, false imprisonment, assault, battery, libel, and defamation" and to include "any deprivation of rights, privileges, or immunities" secured by the federal Constitution or federal law. But the policies provide one limitation: no act may be deemed to have resulted in a personal injury unless it was committed in the "regular course of duty" by the insured.
 {¶ 29} The Kammeyer pleadings fall squarely within the scope of the LEL policies' coverage. The Kammeyer plaintiffs pleaded a civil-rights-deprivation claim. And the language in the Kammeyer pleadings is almost identical to the policies' definition of personal injury.
 {¶ 30} Yet the LEL Insurers advance three reasons why they have no duty to defend: (1) a cover-up in a murder investigation does not occur as part of a police department's regular course of duty; (2) the alleged cover-up in this case was not an accident; and (3) the alleged cover-up falls within the exclusions of the policies.
 {¶ 31} The LEL Insurers refused coverage to Sharonville because they did not consider the alleged cover-up of a murder to be an act within the regular course of duty for a police department. The policies do not define "regular course of duty." And there is no dictionary definition of the phrase. Therefore, we must look to the case law.
 {¶ 32} A state actor's conduct will trigger a Section 1983 claim when the conduct occurs in the actual or apparent course of duty of the actor's office, or if the conduct is such that the actor could not have behaved as he did without the authority of his office.[14] A person acts under color of state law when he abuses a position given to him by the state.[15] A defendant's private conduct outside the scope of his duties and
unaided by indicia of actual or ostensible state authority is not conduct under color of state law.[16] A municipality is liable for the conduct of its employees if the conduct is a part of the municipality's policy or custom, or if the municipality is deliberately indifferent to the offending acts.[17]
 {¶ 33} The LEL Insurers argue that Officer Cramer acted only to protect his own best interest, and that the alleged cover-up was not part of his duties as a police officer. Of course, there has been no evidence that any of the allegations in this case are even in the ballpark of truth, but we must assume for procedural purposes that they are.
 {¶ 34} The Kammeyer pleadings allege that the cover-up was part of a custom, policy, or practice of Sharonville, and was not just the act of one private individual. And if he did what they claim, Cramer could not have covered up the murder and destroyed evidence without the aid of his position as a police officer. The alleged cover-up was part of the Sharonville police department's regular course of duty because it was part of an actual or apparent duty, and was not possible without the aid of Cramer's office.[18]
 {¶ 35} The Kammeyer complaint alleged an active cover-up of a murder by police officers under color of state law. Such a cover-up could have amounted to at least a breach of duty or a failure to act within the scope of duty. Thus, these claims arguably fell within the LEL policies' broad definition of a "wrongful act." And as Judge Learned Hand has stated, "[I]t is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the injury is not in fact `covered.'"[19]
 {¶ 36} For an analogous situation, we must look to other jurisdictions, as Ohio courts have had little experience with LEL provisions. In Greenville v. Haywood,[20] a police officer responding to a call about a reported break-in sexually assaulted the victim of the break-in. The North Carolina Court of Appeals held that the insurer had a duty to defend because of its LEL provision.[21] This is in contrast to other cases where sexual assaults or even wrongful deaths were alleged to have occurred, but the officers in question were not on duty. In those cases, the insurer had no duty to defend because the officers had not been performing law enforcement duties and had not been acting under the color of state law at the time of the incidents.[22]
 {¶ 37} The LEL Insurers argue that an accident must give rise to an intentional tort in order to trigger their coverage. But a civil action claiming a deprivation of rights alleges intentional harm.[23] Under the insurers' logic, the policies would only cover an accidental intentional tort.
 {¶ 38} But one cannot accidentally commit an intentional tort. For example, if a police officer intended to arrest a suspect, but arrested the wrong person, the doctrine of transferred intent would apply. The plaintiff would have an intentional tort claim, not a claim for negligence.
 {¶ 39} Under the LEL Insurers' interpretation of these policies, they would never have a duty to indemnify or defend because an accident cannot give rise to an intentional tort. By this definition of a "personal injury," the policies insure against intentional torts. The exculpatory definition of a "wrongful act" cannot excuse the LEL insurers from their duty to defend. The LEL Insurers cannot purport to insure against something and then define it away.
 {¶ 40} The LEL Insurers further argue that the policies do not apply because they exclude acts such as the alleged cover-up. The LEL policies exclude coverage for claims arising from the willful violation of a penal statute or for damages arising out of an act of fraud. The LEL Insurers assert that the alleged cover-up was a violation of a penal statute or an act of fraud.
 {¶ 41} The Kammeyer plaintiffs sued Sharonville under Section 1983, Title 42, U.S.Code. This statute provides a civil cause of action against municipalities and is not a penal statute.[24]
 {¶ 42} But the LEL Insurers insist that the Kammeyer complaint essentially alleges a willful violation of R.C.2921.32, which defines the criminal offense of obstruction of justice. The LEL Insurers cite Westfield Ins. Co. v. HealthOhio,Inc.,[25] which held that exclusions for the willful violation of a penal statute are valid. But in Westfield, the plaintiffs sued under a statute that provided both civil and criminal penalties for restraint of trade by combination or conspiracy.[26]
 {¶ 43} This was not the case here. The obstruction-of-justice statute provides only for criminal penalties and does not provide for civil penalties.[27] The Kammeyer plaintiffs alleged actions similar to those proscribed under the obstruction-of-justice statute, but they sued for the alleged deprivation of their civil rights. Unlike the plaintiffs inWestfield, the Kammeyer plaintiffs did not sue under a penal statute. And no defendant here has ever been charged with — or convicted under — that penal statute.
 {¶ 44} In one last desperate attempt, the LEL Insurers argue that they have no duty to defend because the alleged actions amount to acts of fraud that are excluded by the policies. The policies' exclusions all similarly state that the policies do not apply to "acts of fraud committed by or at the direction of the insured with affirmative dishonesty or actual intent to deceive or defraud."
 {¶ 45} We must give the terms of the exclusions their plain and ordinary meaning.[28] Black's Law Dictionary defines fraud as "[a] knowing misrepresentation of the truth or concealment of a material fact to induce another to act to hisor her detriment."[29] Ohio case law defines fraud almost identically.[30]
 {¶ 46} The alleged actions do not amount to fraud under the common meaning. There is no mention anywhere in the Kammeyer pleadings that Sharonville had induced the plaintiffs to act to their own detriment. Further, the cases cited by the insurers are not relevant because they involve common-law fraud actions. Here, the Kammeyer plaintiffs did not sue for fraud. They sued for the deprivation of their civil rights. The fraud exclusion does not surface in this case. It is not even below the surface. Or under the sea.
 {¶ 47} We hold that the LEL Insurers have a duty to defend Sharonville in the Kammeyer action.
 {¶ 48} Therefore, we sustain Sharonville's sole assignment of error as it relates to the LEL Insurers. As long as the Kammeyer complaint still has the allegations that trigger the LEL Insurers' duty to defend, the LEL Insurers have that duty.
 i. Conclusion {¶ 49} We affirm the summary judgment entered in favor of the General Liability Insurers. We reverse the summary judgment entered in favor of the LEL Insurers and instruct the trial court to grant summary judgment in favor of Sharonville on its claim against the LEL insurers. We remand for further proceedings consistent with this decision.
Judgment affirmed in part and reversed in part, and cause remanded.
Doan, P.J., and Hildebrandt, J., concur.
[1] See Doe v. Shaffer, 90 Ohio St.3d 388, 2000-Ohio-186,738 N.E.2d 1243.
[2] Civ.R. 56(c); Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267.
[3] Cincinnati Ins. Co. v. Anders, 99 Ohio St.3d 156, 159,2003-Ohio-3048, 789 N.E.2d 1094.
[4] Id.
[5] Cincinnati Indemnity Co. v. Martin, 85 Ohio St.3d 604,605, 1999-Ohio-332, 710 N.E.2d 677.
[6] Preferred Mut. Ins. Co. v. Thompson (1986),23 Ohio St.3d 78, 491 N.E.2d 688.
[7] Cincinnati Ins. Co. v. Anders, 99 Ohio St.3d at 159,2003-Ohio-3048, 789 N.E.2d 1094.
[8] Section 1983, Title 42, U.S.Code.
[9] Ramey v. Mudd, 154 Ohio App.3d 582, 589, 2003-Ohio-5170,798 N.E.2d 57.
[10] Cincinnati Ins. Co. v. Anders, 99 Ohio St.3d at 159,2003-Ohio-3048, 789 N.E.2d 1094.
[11] (1987), 30 Ohio St.3d 108, 113, 507 N.E.2d 1118.
[12] Id.
[13] Id.
[14] Waters v. Morristown (C.A. 6, 2001), 242 F.3d 353, 359.
[15] Id.
[16] Id. (Emphasis added).
[17] Ramey v. Mudd, 154 Ohio App.3d 582, 589, 2003-Ohio-5170,798 N.E.2d 57.
[18] Waters v. Morristown (C.A. 6, 2001), 242 F.3d 353, 359.
[19] Lee v. Aetna Casualty Surety Co. (C.A. 2, 1949),178 F.2d 750, 751.
[20] (1998), 130 N.C. App. 271, 502 S.E.2d 430.
[21] See, also, Young v. Great Am. Ins. Co. (2004),162 N.C. App. 87, 590 S.E.2d 4.
[22] See, e.g., Nat. Cas. Co. v. Bennett (Aug. 25, 1998), Superior Ct. Mass. No. 97-5917; Smith v. Lafayette ParishSheriff's Dept. (2004), 874 So.2d 863.
[23] Id.
[24] Section 1983, Title 42, U.S.Code.
[25] (1992), 73 Ohio App.3d 341, 347, 597 N.E.2d 179.
[26] Id.
[27] R.C. 2921.32.
[28] Hybud Equip. Co. v. Sphere Drake Ins. Co. (1992),64 Ohio St.3d 657, 665, 597 N.E.2d 1096.
[29] Black's Law Dictionary (7 Ed. 1999) 670 (Emphasis added).
[30] See Russ v. TRW, Inc. (1991), 59 Ohio St.3d 42, 49,570 N.E.2d 1076.