NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0081n.06
Filed: January 31, 2006

Case Nos. 04-4415; 04-4508

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HARTFORD FINANCIAL SERVICES GROUP, INC., | ) ) ) | |
| Plaintiff-Appellee/Cross-Appellant, Counterclaim Defendant-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| CLEVELAND PUBLIC LIBRARY, | ) ) | |
| Defendant-Appellant/Cross-Appellee, Counterclaim Plaintiff-Appellant. | ) ) | |

_____

BEFORE: NORRIS and BATCHELDER, Circuit Judges; COHN[*], District Judge.

ALICE M. BATCHELDER, Circuit Judge. Cleveland Public Library ("CPL") appeals

the judgment entered after the jury returned a verdict in favor of Hartford Financial Services Group,

Inc. ("Hartford") in Hartford's action seeking a declaratory judgment that Hartford was not obligated

to provide insurance coverage for damage to CPL's Main Building resulting from the construction

of a new wing of the building in 1994. Hartford cross-appeals the district court's refusal to grant

it summary judgment on its suit-limitation defense to CPL's counterclaims filed in this action.

Although the parties have raised multiple assignments of error, we will affirm the judgment on the

basis of our conclusions that the district court did not err either in sending to the jury the issue of

whether Hartford's notice defense was waived or in refusing to grant a new trial on that issue, in

_____

[*]The Honorable Avern L. Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

finding that sufficient evidence supported the jury's verdict that Hartford had not waived the notice defense, and in instructing the jury on the definition of "loss" and including a reference date in the instruction. Because we find no error in these particulars, we need not reach the remaining assignments of error in the appeal or the cross-appeal.

## I. Factual and Procedural History

Hartford issued insurance policies to CPL in 1993 that provided coverage against "all risks of physical loss or damage, except as excluded, to covered property" and were intended to cover damage resulting from the construction of a new East Wing to the Main Building of the library. The original policy was effective in July 1993 and ran through July 1996; it was renewed for another three years when the original expired.

The construction of the new CPL wing, which commenced in 1994, required that an old building be demolished and the ground excavated to 17 feet below the water table. As part of the construction, soil directly adjacent to the Main Building was removed, and the excavation contractor constructed an "augercast pile wall" in order to prevent the soil underneath the Main Building from flowing into the excavated pit. However, in August 1994, soil seeped through the cracks in the wall and into the pit, which caused settling of the Main Building. CPL noticed damage to the building, but, considering the damage merely cosmetic, did not report it to Hartford.

In October 1994, CPL found large cracks in the Main Building and installed steel sheeting around the excavation site to prevent soil flows. This setup worked for a short time, but on December 20, 1994, work crews discovered a large tear in the sheeting, which had caused a large quantity of soil to flow from underneath the Main Building into the excavated pit. Although this soil

2

flow had caused new damage to the building, CPL estimated that the damage totaled less than its $100,000 deductible and did not notify Hartford.

After CPL's contractors repaired the tear and pumped grout underneath the building to stabilize it, the building reportedly remained stable for several months. However, the building began to move again in July 1995, and CPL contacted Thomas Borror ("Borror"), its independent insurance consultant, to inquire whether it should notify Hartford about the damage. Borror evidently was surprised that it had not done so already and estimated that by that time the damage totaled approximately $500,000. CPL sent Hartford a written Notice of Loss on September 25, 1995, advising that the damage occurred on December 20, 1994, when workers found the rupture in the steel sheeting. On October 18, 1995, Hartford sent CPL a standard reservation of rights letter stating that CPL had put Hartford on notice of damage that occurred on or about December 23, 1994, and that it would make a determination of coverage when it finished investigating the matter.

Hartford hired a forensic engineer to examine the site and prepare a report. The engineer visited the site in October 1995 and found that construction had continued after the date of loss stated in the Notice of Loss and that the new wing had been constructed, making access to the evidence of the cause of the loss impossible. Hartford then requested a Proof of Loss and documentation of any claim that CPL was going to make for the cracks and damage to the architectural finishes.

CPL contends that it sent Hartford several notices regarding damage and repairs in the years that followed, and that additional information was provided in face-to-face meetings with Hartford representatives. CPL submitted a Proof of Loss in December 1998, when the repairs had been

3

substantially completed. Hartford acknowledged receipt of the notice, but stated that it did not consider the notice to be a "formal claim filing" as required by the policy language.

CPL representatives met with Hartford representatives on April 15, 1999, and CPL presented Hartford with its Proof of Loss (which CPL considered to be an "amended proof of loss," relating to the one sent in December 1998) and requested a $2.5 million advance on the claim payout. However, the April 15,1999, Proof of Loss stated that some of the damage incurred had occurred in August 1994, as opposed to December 1994, the date CPL had originally given as the date of the initial damage. Based on this information, Hartford send CPL a letter on April 29, 1999, stating that the Proof of Loss presented "a far different claim than we were originally led to believe was involved in this matter," inasmuch as the original notice stated that the onset date was in December 1994. Hartford acknowledged that, from January 1996 to April 1999, it intended to pay the claim once the repair costs were known, but that this intent was based on the assumption that the loss had begun in December 1994 when the steel sheeting gave way, rather than in August 1994, when CPL first experienced problems with settling.

Hartford determined on July 15, 1999, that CPL's claims were excluded from coverage by several policy exclusions and by CPL's delay in providing notice and proof of loss and in filing suit. Hartford therefore denied the claim and filed this action in the district court, seeking a declaration that Hartford was not obligated to provide insurance coverage for damage arising from a construction project involving CPL's Main Building. Hartford based this request on CPL's failure to provide immediate notice of loss, failure to provide proof of loss, and failure to file suit within one year after inception of the loss. CPL counterclaimed for breach of contract, declaratory relief,

4

bad faith, promissory estoppel, fraud, and negligent misrepresentation. Hartford denied those claims and raised defenses to them.

After the district court ruled on various motions to dismiss and for summary judgment, the remaining claims – Hartford's claim for declaratory relief and CPL's counterclaims for declaratory relief, breach of contract, negligent misrepresentation, promissory estoppel, and fraud – were tried to a jury. At the close of the evidence, the district court denied CPL's motion for a directed verdict on the policy provisions, granted Hartford's motion for judgment as a matter of law on CPL's counterclaim for negligent misrepresentation, and denied all other motions. The jury then returned a verdict in Hartford's favor on all claims, finding specifically that CPL had failed to give immediate notice of loss, Hartford was prejudiced by the delay, Hartford did not waive the notice requirement, Hartford should not be estopped from enforcing the notice provision, Hartford did not engage in fraudulent conduct, and Hartford did not breach the insurance contract. Because these issues were dispositive of the entire case, the jury did not reach any other issues.

The district court entered final judgment on March 24, 2004, and CPL filed motions for partial judgment notwithstanding the verdict and for a new trial, asserting: (1) there was insufficient evidence to support the jury's finding that Hartford did not waive the notice defense or should not be estopped from asserting that defense; (2) CPL should be entitled to a new trial on the waiver and estoppel issues relating to the notice defense; (3) CPL should be entitled to a new trial because the notice it gave was reasonable under the circumstances and, if not, Hartford was not prejudiced by the delay; and (4) CPL should be entitled to a new trial because Jury Instruction 23 improperly defined the term "loss" and determined a disputed issue of fact. The district court denied these

5

motions on October 20, 2004. CPL timely appealed and Hartford filed a timely cross-appeal of the district court's denial of summary judgment on Hartford's suit-limitation defense.

We find CPL's assignments of error somewhat unclear, but we conclude that CPL takes issue with (1) the district court's decision not to grant it judgment notwithstanding the verdict on the issue of waiver of the notice defense; (2) the district court's finding that Jury Instruction 23 was correct and did not prejudice CPL; and (3) the district court's refusal to grant CPL relief on the merits of the notice defense. We therefore focus our attention on those issues.

## II. Notice Defense

### A. Waiver

CPL moved for a directed verdict and for judgment notwithstanding the verdict on the issue of whether Hartford waived its defense of late notice, and also moved for a new trial on the same ground. The district court denied all of these motions. On appeal, CPL argues that it was entitled to "judgment" on the issue of whether the notice defense was waived. It is therefore unclear whether CPL is challenging the district court's refusal to grant the motion for judgment notwithstanding the verdict or the motion for a new trial. We hold that it is not entitled to relief under either theory.

We review de novo the district court's denial of a motion for judgment as a matter of law. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000). In diversity cases, where the Rule 50(b) motion is based on a challenge to the sufficiency of the evidence, a state-law standard of review applies. *Id.* (citing *Morales v. American Honda Motor Co.,* 151 F.3d 500, 506 (6th Cir. 1998)). Ohio law therefore governs our standard of review here. Under Ohio law, we use the same standard in reviewing denials of motions for directed verdict and for judgment as a matter of law, and we must construe the evidence most strongly in favor of the party against whom the motions

6

were made. *Posin v. A.B.C. Motor Court Hotel, Inc.*, 344 N.E.2d 334, 338 (Ohio 1976). We review for abuse of discretion the denial of a motion for a new trial. *United States, ex rel. A+ Homecare, Inc. v. Medshares Mgt. Group, Inc.*, 400 F.3d 428, 450 (6th Cir. 2005). Though a court may set aside a verdict as being against the clear weight of the evidence, it may do so only if the verdict was unreasonable. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 820-21 (6th Cir. 2000). A new trial is improper if a rational juror could reach the challenged verdict. *Id.*

The question of whether an insurer has waived its notice requirements is an issue of state insurance law. Whether an insurer has waived a defense is a question of fact. *Lind v. State Automobile Mutual Insurance Assoc.*, 190 N.E. 138, 140 (Ohio 1934). A waiver of the notice requirement may be shown by the words or conduct of the insurer's agent, but such words or conduct must be inconsistent with an intention to enforce strict compliance with the terms of the policy in order for the notice requirement to be impliedly waived. *Id.* The insurer has the duty to give notice of an objection within a reasonable time once it receives notice; if it fails to do so and acts on the information provided, it waives its right to insist on strict performance of the insurance contract's provisions. *Id.* at 141.

Several disputed facts precluded the district court from granting CPL's motion for a directed verdict and judgment not withstanding the verdict. There is evidence that CPL put Hartford on notice of the loss in September 1995 and that Hartford should have known at that time that the loss could have dated back to August 1994. And while Hartford did not insist on timely notice or explicitly reserve its rights as to the timeliness of the notice and proof of loss, Hartford did respond to the September 1995 notice in its October 1995 letter and did reserve its rights as to these defenses, albeit in boilerplate language. Furthermore, several Hartford representatives testified that Hartford

7

never intended to waive any of its rights or defenses, made clear to CPL that it was not limiting its reservations of rights to those stated in the letters sent to CPL, and never had all of the facts necessary to make a knowing waiver of its rights because CPL had misrepresented to it the date of onset of the actual loss. Also disputed is whether Hartford ever knew that anything other than the sudden tear in the steel sheeting caused the loss as reported in the 1995 Notice of Loss, and whether the conduct cited as evidence of waiver took place after the time period had expired for CPL to give timely notice of loss to Hartford, which was sixty days after the loss.

The resolution of these factual disputes was within the jury's province. The evidence, when viewed in the light most favorable to Hartford, is sufficient for the district court to have denied the motions for judgment as a matter of law, and that same evidence is sufficient to support a rational juror's finding that Hartford did not waive its notice defense.

## B. Merits

CPL moved for a new trial on the merits of Hartford's notice defense. That motion was denied, and our review is for an abuse of discretion. *See A+ Homecare*, 400 F.3d at 450. CPL argues that the district court should have granted it a new trial on the merits of the notice defense even if that defense was not waived. This assignment of error contains three arguments.

First, CPL contends that the notice clause in the insurance contract is ambiguous and unenforceable because it would make no sense to require CPL to give notice within 60 days of a "loss" when a "loss" of the nature that CPL experienced does not happen at any one time. This argument is meritless; the policy specifically contemplated ongoing losses as well as discrete ones, stating that suit must be filed within twelve months "after *inception* of the loss" (emphasis added).

8

Second, CPL asserts that, because the notice provision was included in the Standard Fire Policy and not in the All Risk Property Policy, both of which were issued to protect CPL during the construction, the notice provision did not apply to this claim, which fell under the provisions of the All Risk Property Policy. This argument is meritless as well; the two policies were issued together and the Standard Fire Policy provisions expressly apply to "other perils insured against," which includes the perils covered under the All Risk Property Policy.

Finally, CPL argues that the undisputed facts show that it provided its notice of loss within a reasonable time after the loss occurred. However, as we have already discussed in the context of whether Hartford waived the notice defense, the facts in this regard were not undisputed. Sufficient evidence existed to support a rational juror's belief that CPL had not complied with the notice requirement, and we therefore hold that the district court did not abuse its discretion in denying CPL's motion for a new trial on the merits of Hartford's notice defense.

## III.  Jury Instruction 23

### A. The Instruction

CPL argued in the district court that it should have been granted a new trial because Jury Instruction 23 was erroneous in two respects and unfairly prejudiced it. Jury Instruction 23 stated as follows:

> A requirement that notice be given "immediately" means notice within a reasonable time under the circumstances of the case. This court has determined that in the context of the notice of loss provision, the term "loss" means damage to the Library's property that the Library observed. Here, the Library first observed damage to its property in August 1994.

CPL asserts that this instruction was erroneous because it incorrectly defined "loss" and because the district court improperly found as fact the "timing, scope and cause of the Library's loss."

9

**B. Waiver of Objections**

Federal Rule of Civil Procedure 51 requires that a party object to jury instructions distinctly and contemporaneously. *See* FED. R. CIV. P. 51(c)(1) & (d)(1). The requirements of Rule 51 are satisfied "if it is clear that the judge was made aware of the possible error in or omission from the instructions." *Gradsky v. Sperry Rand Corp.*, 489 F.2d 502, 503 (6th Cir. 1973).

CPL's objection to Instruction 23, as it is presented to us, was not presented to the district court. During the district court's conference on the jury instructions, there was considerable discussion about the exact wording of Instruction 23, which originally contained a finding that CPL's loss commenced on August 8, 1994, and the definition of "loss" as "damage to the Library's property that the Library observed." CPL objected to the inclusion of the August 8 date in the instruction. CPL did not object to the definition of "loss," nor did it object to the inclusion of *any* date,[1] the objections raised in this appeal. CPL has waived these objections because it did not first present them to the district court for resolution. Our review of both of these aspects of the instruction is therefore limited to plain error. *See* FED. R. CIV. P. 51(d)(2); *Chonich v. Wayne County Community College*, 973 F.2d 1271, 1275 (6th Cir. 1992) (failure to specify grounds for objection or specifying one ground but not another is failure to preserve the issue for appeal).

**C. Definition of "Loss"**

---

[1]CPL's attorney objected to the use of the August 8 date and stated that the actual date was sometime in late August, suggesting that the instruction contain the statement that "the loss was initiated in August of 1994." The district judge suggested changing the wording to say "the Library first observed damage to its property in August, 1994," which the court viewed as consistent with what CPL wanted. CPL's attorney did object, saying "that kind of makes it worse, from our standpoint," but he did not base his objections on the argument that the inclusion of the August date in the instruction was prejudicial or on the argument that the instruction improperly defined "loss." Furthermore, CPL never objected to the definition of "loss" used by the district court in the instruction, nor did it provide an alternative definition or instruction. Finally, when the district court provided the precise language that would be used in the instruction, CPL made no objection.

10

We review jury instructions to determine whether they adequately informed the jury of the considerations it was to make and provided a legal basis for the jury's decision. *Donald v. Wilson*, 847 F.2d 1191, 1199 (6th Cir. 1988). The instructions given must fairly and adequately cover the issues material to the jury's deliberations. *Jones v. Consol. Rail Corp.*, 800 F.2d 590, 592 (6th Cir. 1986).

The term "loss" was not defined in the insurance policies. In ruling on the pre-trial motions, the district court originally found that the term "loss" was an ambiguous term and that the court must therefore adopt the interpretation that was most favorable to the insured; at the close of the evidence, however, the court found that the only possible meaning of "loss" was "damage observed by the insured." CPL argues on appeal that the district court should have adopted the dictionary definition, which it claims is "the insured's financial detriment by death or damage that the insurer becomes liable for."[2] CPL advocates this particular definition because its main argument throughout this appeal has been that it suffered no "loss" until the damage to its property exceeded the amount it would have to pay as a deductible. Alternatively, CPL argues that "loss" should mean the "amount to be paid according to the insurance contract."

While ambiguous terms are construed against the insurer because the insurer creates the policy forms and can make them more clear and precise if it chooses, *see Copelin-Mohn, Inc. v. Buckeye Union Cas. Co.*, 20 N.E.2d 713, 714 (Ohio 1939), courts will attempt to discern the everyday meaning of the word or term as understood by the ordinary person and will construe it against the insurer only if there is no such everyday meaning. *See Olmstead v. Lumbermens Mut. Ins. Co.*, 259 N.E.2d 123, 126 (Ohio 1970); *Toms v. Hartford Fire Ins. Co. of Hartford, Conn.*, 63

---

[2]Again, CPL did not offer this definition as an alternative instruction in the district court.

11

N.E.2d 909, 911 (Ohio 1945); *City of Sharonsville v. Am. Employers Ins. Co.*, 818 N.E.2d 295, 303 (Ohio Ct. App. 2004).

The definition of "loss" that the district court adopted was not plainly erroneous; in fact, this is probably the closest the court could come in finding a definition that comports with the ordinary meaning of the term. *See Podnar v. Northeast Adjusting Servs., Inc.*, 739 N.E.2d 878, 881 (Ohio Ct. App. 2000), *Olmstead*, 259 N.E.2d at 126; *Polk v. Landings of Walden Condo. Ass'n*, 2005 WL 1862126, *7 (Ohio Ct. App. 2005); *First Nat'l Bank of Dillonvale v. Progressive Cas. Ins. Co.*, 640 N.E.2d 1147, 1148 (Ohio Ct. App. 1993). CPL's contortion of the alternative definition – offered for the first time on appeal – to support the idea that it had no duty to report any losses that amounted to less than its deductible is simply not tenable. Furthermore, the policy language at issue here requires CPL to give "immediate written notice to [Hartford] of any loss." The ordinary meaning of "any loss" is certainly not "any loss above and beyond the amount an insured would have to pay as a deductible." *See Olmstead*, 259 N.E.2d at 126.

**D. Inclusion of "August 1994" in Instruction 23**

Finally, CPL argues that the district court erred in including in the instruction the "disputed fact" that damage to the insured property was first observed in August 1994. However, it has not argued how the district court plainly erred. CPL admitted in open court that it first observed damage to its property in August 1994, and the undisputed facts show that this is so. It is not plain error to include an undisputed fact in a jury instruction. *Cf., Resolution Trust Corp. v. Eason*, 17 F.3d 1126, 1133 (8th Cir. 1994) (stating that a jury instruction that assumes a disputed fact is prejudicial error).

Moreover, the fact that CPL "first observed damage to its property in August, 1994" likewise does not preclude the jury from finding that the loss was progressive. The district court correctly

12

instructed the jury on Ohio law with regard to what "immediately" means, stating that it means "within a reasonable time under the circumstances of the case." The determination of whether CPL gave notice "immediately" after the "loss" was properly left to the jury, and there was sufficient evidence to support the jury's verdict that CPL did not give notice of its "loss" "immediately." The instruction given did not "prevent[] the jury from considering a material issue," *United States v. Mentz*, 840 F.2d 315, 320 (6th Cir. 1988), and was therefore not erroneously given.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

13